WILLIAM F. PORTANOVA, State Bar No. 281364
PORTANOVA & ASSOCIATES
400 Capitol Mall, Suite 1100
Sacramento, CA 95814
Telephone: (916) 444-7900
Fax: (916) 444-7998
Wfp@Portanova.com

Attorney for Defendant
Owen Hughes

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>OWEN HUGHES,<br><br>Defendant. | No. 2:20-CV-00321-JAM<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**<br><br>Date: May 5, 2020<br>Time: 1:30 pm<br>Courtroom: 6, 14th Floor<br>Judge: Hon. John A. Mendez |

PLEASE TAKE NOTICE that on May 5, 2020, or as soon thereafter as this matter may be heard before the Honorable John A. Mendez, Defendant Owen Hughes, by and through his undersigned counsel, will and hereby does move this Court for an order dismissing the claims against him for failure to allege claims of fraud and misrepresentation with the required particularity under Fed. R. Civ. P. 9(b) and 12 (b)(6).

For the reasons set forth below, Mr. Hughes respectfully requests that this Court grant his Motion to Dismiss. This Motion is based upon this Notice, the attached Memorandum of Points and Authorities, and such other matter that may be

presented at the hearing thereof.

This motion is made following the conference of counsel pursuant to the Court's standing order which took place on March 6, 2020.

Respectfully submitted,

Date: March 12, 2020  /w/ William F. Portanova
WILLIAM F. PORTANOVA
*Attorney for defendant Owen Hughes*

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.  Introduction

Plaintiff's Complaint for Damages ("Complaint") should be dismissed in its entirety because it fails both to state a claim upon which relief can be granted or to plead fraud with particularity. The Complaint contains a jumble of regulatory guidelines and categorical allegations of failure of compliance therewith but fails to connect its scatter-shot allegations to the elements of its causes of action.  As a result, the Complaint is not specific enough to give Mr. Hughes notice of the particular misconduct alleged such that he can defend against particularized allegations rather than simply deny having done anything wrong.

In Counts I and II, Plaintiff fails to plead the necessary elements of a False Claims Act ("FCA") violation with anything approaching sufficient particularity. Instead, Plaintiff presents its own unsupported conclusions as the evidence sustaining its allegations and relies on improper or illogical inference from neutral facts.  As such, Plaintiff fails to plead sufficiently even to establish negligence in Mr. Hughes' accounting practices, let alone the knowledge of their categorical and complete failure that would sustain the notion that his certification as to their suitability would constitute a "false claim" under the FCA. Because Plaintiff does not satisfy its burden under the FCA, the Complaint should be dismissed under Fed. R. Civ. P. (hereinafter "Rule") 9(b) and 12(b)(6).

Plaintiff's Count III and IV should also be dismissed under Rules 8(a) and 12(b)(6).  Count III purports to bring an action

for unjust enrichment. Unjust enrichment is not a recognized cause of action under either federal or California law but rather a synonym for restitution. Ninth Circuit case law permits such claims to proceed as quasi-contract claims; however, a quasi-contract theory of recovery fails as a matter of law where, as here, there exists an undisputed allegation of an enforceable contract between the parties to the action. Count IV, alleging payment by mistake, is also a quasi-contract theory, and, likewise, fails as a matter of law.

**II. Background**

Mr. Hughes is the former owner of a research entity known as Eon Research Corporation ("Eon"). In 2007, on behalf of Eon, Mr. Hughes applied for and was awarded a Small Business Innovative Research ("SBIR") grant from the National Institutes of Health ("NIH") to support his research into methods for identifying environmental toxins. The government alleges that Mr. Hughes made statements as to the accounting policies and procedures pertaining to the management of this grant money that were knowingly false.

**III. Argument**

A. Standards Governing Motions to Dismiss

Pursuant to Rule 12(b)(6), dismissal is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable theory. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A complaint is also subject to dismissal for failure to state a claim if the allegations on their face show that relief is barred for some legal reason. *Jones v. Bock*, 549 U.S. 199, 215 (2007); *see also Groten v. California*, 251 F.3d

Defendant's Memorandum of Point and Authorities        2

844 (9th Cir. 2001).

The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a plaintiff need not establish a probability of success on the merits, he or she must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id*. Importantly, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*.

The pleading of a cause of action involving fraud or mistake is subject to the significantly more exacting standards of Rule 9(b). In contrast to the more lenient standard set forth in Rule 8(a)(2), Rule (9)(b) requires that a party "state with particularity the circumstances constituting fraud or mistake" in his or her complaint. Fraud must be plead "with a high degree of meticulousness." *Desaigoudar v. Meryercord*, 223 F.3d 1020, 1022 (9th Cir. 2000). The allegations of fraud "must be accompanied by 'the who, what, when, where, and how' of the misconduct charged" and "must 'set forth more than the neutral facts necessary to identify the transaction.'" *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

The exacting specificity required by Rule 9(b) functions "to give defendants notice of the particular misconduct so that they

Defendant's Memorandum of Point and Authorities    3

can defend against the charge and not just deny that they have done anything wrong." *Vess*, *supra*, at 1106.  Rule 9(b) also functions to deter the filing of actions as a pretext for discovery of unknown wrongs, to protect defendants from "the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001).  The remedy when a plaintiff fails to plead fraud with particularity is the same as in a Rule 12(b)(6) motion for failure to state a claim on which relief can be granted. *Vess*, 317 F.3d at 1107.

In deciding whether to grant a motion to dismiss, a court must accept as true all "well-pleaded factual allegations." *Iqbal, supra*, 556 U.S. at 678.  A court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  Further, a court need not accept as true pleadings that are no more than "[n]aked assertion," "labels and conclusions," or "formulaic recitation of the elements of a cause of action."  *Iqbal, supra*, 556 U.S. at 678; *see also Sprewell*, 266 F. 3d 979, 988. A court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

Defendant's Memorandum of Point and Authorities 4

### B. Counts I and II Must be Dismissed for Failing to Plead Fraud with Particularity

#### *1. Legal Standard*

The FCA makes liable anyone who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(A), (B). A prima facie claim under the FCA requires a showing that: "(1) the defendant made a claim against the United States; (2) the claim was false or fraudulent; and (3) that the defendant knew the claim was false or fraudulent." *U.S. ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 461 (9th Cir. 1999). Claims are not "false" under the FCA when reasonable persons can disagree regarding whether a service was properly billed to the Government. *United States v. Prabhu*, 442 F. Supp. 2d 1008, 1026 (D. Nev. 2006); *see also Hagood v. Sonoma County Water Agency*, 81 F.3d 1465, 1477 (9th Cir.1996).

The element "knowingly" under the FCA can be satisfied by one of three possible levels of scienter: actual knowledge, deliberate ignorance, or reckless disregard of the truth or falsity of the statement at issue. 31 U.S.C. § 3729(b)(1)(A). Innocent mistakes and negligence, however, do not lead to FCA liability. *Wang v. FMC Corp.,* 975 F.2d 1412, 1420 (9th Cir.1992).

#### *2. Argument*

Plaintiff's Complaint fails to articulate a theory of fraud with requisite particularity. Instead, Plaintiff sidesteps this

Defendant's Memorandum of Point and Authorities  5

requirement in favor of a lengthy recitation of applicable regulations, followed by conclusory allegations stating that Eon was categorically out of compliance with those regulations and, therefore, assorted certifications he made to the contrary were knowingly false. Plaintiff relies on categorical or vague language in making its allegations with no attempt to ground those allegations with relevant factual assertions as to any statement's falsity.  The net effect is to deny Mr. Hughes the ability to defend himself, instead leaving him able only to "deny he has done anything wrong."

Plaintiff impermissibly relies on its own conclusions as to the sufficiency of Eon's accounting procedures to allege the falsity of Mr. Hughes' certifications.  Rather than laying out with specificity the manner in which it believes those accounting procedures to have been lacking, Plaintiff relies entirely on "[n]aked assertion," "labels and conclusions," or "formulaic recitation of the elements of a cause of action" of the type specifically disallowed to sustain a pleading against a motion to dismiss.  As a result, it is unclear wherein lies the basis for Plaintiff's allegation that any of the various statements and certifications Mr. Hughes made during the course of his SBIR grant were knowingly false or fraudulent.

Plaintiff's deficiently pleaded allegations as to accounting procedures begin at paragraph 37. Complaint at ¶37, ECF 1. Several of the principal allegations consist almost entirely of language pulled from relevant regulations followed by categorical statements that Defendant failed to comply therewith. *See* Complaint at ¶37-42. For example, in lieu of the requisite

particularized facts, Plaintiff instead alleges:

> "Eon's accounting records did not 'identify the source and application of funds for HHS-sponsored activities' or permit '[c]omparison of outlays with budget amounts for each award.' To the contrary, Hughes knew that Eon's records were sloppy, incomplete, and inaccurate, and that, in fact, Eon did not maintain records that substantiated how it used the federal funds it received. Eon's records could not support any reconciliation between disbursements of Grant funds and use for proper Grant-related purposes." ¶38.

Much of the language of the paragraph is simply the language of the regulations recited earlier in the Complaint stated as negations. Plaintiff does not allege specifically who, why, when, or how the accounting system failed through particularized claims but rather offers its own conclusions as evidence of its allegations. Instead of the requisite fact pleading, Plaintiff offers a tautology. As a result of this circular logic, there is nothing specific within this allegation to rebut or defend. Much of Plaintiff's pleading regarding the alleged accounting failures follow this format, impermissibly relying on Plaintiff's own conclusions to support its allegations. *See also* ¶37-42.

In perhaps the most egregious example of this defective and impermissible rote recitation in place of necessary fact allegations, in the paragraph 41, Plaintiff simply restates the regulations, quoted at length in paragraphs 24 and 27, in the negative. ¶24, 27, 41. There is not even a slight attempt to add factual particularity to the "naked assertions" and "formulaic recitations" such that Mr. Hughes would be able to defend himself against government claims.

The balance of Plaintiff's allegations are neutral or irrelevant descriptions of the factual context in which Mr.

Hughes was operating his business. Innocent and permissible activities are pleaded as indicia of accounting fraud without any attempt to connect them with the relevant regulations the government alleges Mr. Hughes falsely certified himself to comply with. For instance, the government misleadingly points to transfers of funds between the Eon business account and Mr. Hughes personal account and to Mr. Hughes' draws of owner equity from the Eon account in the form of personal expenditures as evidence of knowing accounting failures. ¶37, 44. But in fact, a draw of owner's equity is the only manner by which one can pay oneself and account for it properly under the law. Additionally, the relevant regulatory statements from the Office of Management and Budget specifically state that use of separate accounts shall not be required for recipients of federal awards. *See* OMB Circular 110.22(h)(2)(i)(1) ("Federal awarding agencies shall not require separate depository accounts for funds provided to a recipient or establish any eligibility requirements for depositories for funds provided to a recipient"). Plaintiff's attempt to portray Mr. Hughes' legal use of a single business account as evidence of some kind of illegal accounting practice is unfounded and non sequitur. Moreover, Plaintiff makes its non sequitur allegation without specificity or directly connecting this conduct to the allegations of false claims.

Likewise are the multiple references Plaintiff makes to drawdowns "after the grant performance period had ended." ¶31, 32, 46. Such withdrawals of funds after the grant period are not prohibited under 45 C.F.R. 74 and Plaintiff makes no attempt to articulate why they should give rise to an inference that Mr.

Defendant's Memorandum of Point and Authorities 8

Hughes was acting fraudulently in certifying compliance the relevant regulations. Similarly, the government alleges that certain reporting documents were filed outside of the "required timeframe" with no articulation of how this is related to forgoing allegations of false certification or even specific citation to a specific statement or certification. ¶40. Moreover, the government's own allegation seems to imply that any alleged tardiness in filing was due to concern with ensuring accounting accuracy.

The few assorted other allegations that Plaintiff offers in support of its claims that Mr. Hughes knowingly misrepresented his compliance with federal regulations are vague to the point of unintelligibility and the government makes no effort to connect them to the complained of false certification. For instance, the unsupported conclusion that "Eon's accounting records could only substantiate that it used approximately $254,745 for allowable grant purposes." ¶40. Not only is this a legal conclusion, but it gives no detail as to what transactions were "unallowable" or make any attempt to connect it to a certification or statement from Mr. Hughes. Likewise, the allegation that "at least $64,000 of Grant funds were improperly used on expenses Eon incurred after the Grant period had concluded" is a legal conclusion and untied to Plaintiff's allegation of submission of false certifications. ¶45.

Even the alleged statements of Mr. Hughes and his employee are post-facto attempts to narrate mundane accounting practices from eight years prior. Assuming arguendo that the statements are accurate, the government makes no attempt to connect them

Defendant's Memorandum of Point and Authorities 9

with the allegedly false certifications from years prior. At best, the statements ascribed to Mr. Hughes are ambiguous and reflective of a sense of responsibility for any historical accounting errors brought to light during the audit. By contrast, the alleged statements of the employee directly contradict the government's allegation of control failures, implying that there existed segregation of roles between the person submitting costs and the person booking them, as well as the proper functioning of those roles in that irregular cost submissions were investigated and documented.

To satisfy the particularity requirement of Rule 9(b), "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged" and "must 'set forth more that the neutral facts necessary to identify the transaction.'" *Vess*, 317 F.3d at 1106. Plaintiff's articulation of its theory as to the knowing falsity of Mr. Hughes' certifications to the government do not remotely approach what is required under Rule 9(b). Instead of offering details that would reasonably suggest that Mr. Hughes knowingly presented a false or fraudulent claim for payment or approval to the government, Plaintiff uses its own conclusions to sustain its allegations. If the government's theory is that Mr. Hughes failed to implement a sufficient accounting system under federal regulations and then knowingly lied about that fact, they must present facts in support of that theory sufficient to allow an inference in favor of their claims.

As the Ninth Circuit has pointed out, the FCA knowledge standard does not extend to honest mistakes, but only to "lies."

*See Hagood*, 81 F.3d at 1478 ("requisite intent is the knowing presentation of what is known to be false, as opposed to innocent mistake or mere negligence"). Indeed, Congress specifically amended the FCA to include this definition of scienter, to make "firm ... its intention that the act not punish honest mistakes or incorrect claims submitted through mere negligence." *U.S. ex rel. Hochman v. Nackman*, 145 F.3d 1069, 1072 (9th Cir. 1998) (quoting S.Rep. No. 99–345, at 7 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5272).

This is because the FCA is not intended to be some wide-ranging statute to police all types of regulatory or contractual compliance. *See, e.g., United States ex rel. Willard v. Humana Health Plan,* 336 F.3d 375, 381 (5th Cir.2003) ("The False Claims Act does not create liability merely for a healthcare provider's disregard of Government regulations or improper internal policies unless, as a result of such acts, the provider knowingly asks the Government to pay amounts it does not owe") (citation omitted); *U.S. ex rel. Swafford v. Borgess Med. Ctr.*, 98 F. Supp. 2d 822, 828 (W.D. Mich. 2000), *aff'd, 24 F. App'x 491* (6th Cir. 2001) (the "FCA is not an appropriate vehicle for policing technical compliance with administrative regulations"; mere violations of administrative regulations are not actionable under the FCA "unless the violator knowingly lies to the Government about them").

While a court must accept as true all "well-pleaded factual allegations." *Iqbal, supra*, 129 S. Ct. at 1950, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

Defendant's Memorandum of Point and Authorities         11

inferences." *Sprewell, supra*, at 988. Here, Plaintiff's pleading fails entirely to allege that Mr. Hughes' accounting procedures were even slightly deficient, let alone sufficiently so that describing them in compliance with government regulation would constitute a "knowingly false certification." The government presents its own unsupported conclusions as the evidence sustaining its allegations and relies on improper or illogical inference from neutral facts. As such, Plaintiff fails to plead sufficiently even to establish negligence in Mr. Hughes' accounting practices, let alone the knowledge of their categorical and complete failure that would sustain the notion that his certification as to their suitability would constitute a "false claim" under the FCA.

Accordingly, Plaintiffs Counts I and II should be dismissed for failure to plead fraud with particularity as required under Rule 9(b).

### B. Counts III and IV Must be Dismissed for Failing to State a Claim Under Which Relief Can Be Granted

Plaintiff purports to bring a cause of action for "unjust enrichment." Federal common law does not provide for such a cause of action. Federal courts within the Ninth Circuit have uniformly held that unjust enrichment is a remedy, not a cause of action. *See Newsom v. Countrywide Home Loans, Inc.,* 714 F.Supp.2d 1000, 1009–1010 (N.D.Cal.2010). The Ninth Circuit has held, applying California law principles, that a plaintiff attempting to assert a claim for unjust enrichment "though inartful, [is] better read as raising a valid quasi-contract claim seeking the remedy of restitution." *See Astiana v. Hain Celestial Grp., Inc.,*

Defendant's Memorandum of Point and Authorities 12

783 F.3d 753, 762 (9th Cir. 2015).

Ninth Circuit case law is clear that no recovery is possible under quasi-contract theories where a valid express contract exists. *See Paracor Finance. Inc. v. General Electric Capital Corporation*, 96 F.3d 1151, 1167 (9th Cir. 1996) ("unjust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the rights of the parties."); *see also Newberry Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1405 (9th Cir. 1996) (stating the "a party to an enforceable contract may not seek recovery for a contract breach by resort to extra-contractual theories.")

Here, there is an undisputed allegation by the government of a valid, existing contract between Mr. Hughes and the NIH. Therefore, Plaintiff's Counts III and IV should be dismissed.

Respectfully submitted,

Date: March 12, 2020  /w/ William F. Portanova
WILLIAM F. PORTANOVA

*Attorney for defendant Owen Hughes*

Defendant's Memorandum of Point and Authorities    13