Maurice B. VerStandig, Esq.
Admitted *Pro Hac Vice*
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Telephone: 301-444-4600
Facsimile: 301-576-6885
E-mail: mac@mbvesq.com
*Counsel for the Plaintiffs*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERONICA BRILL, *et al.* | Case No. 2:19-cv-02027-WBS-AC |
| Plaintiffs, | The Honorable William B. Shubb |
| vs. | OPPOSITION TO DEFENDANT MICHAEL POSTLE'S RENEWED MOTION TO DISMISS PLAINTIFFS' COMPLAINT (DE #50) |
| MICHAEL L. POSTLE, *et al.* | |
| Defendants. | |



## TABLE OF CONTENTS

I.      Introduction ........................................................................................................... 2

II.     Standard ................................................................................................................ 3

III.    Summary of Pertinent Allegations ....................................................................... 5

IV.     Argument: Counts III and IV of the Complaint are Not Subject to the Rigors of Federal
        Rule of Civil Procedure 9 .................................................................................... 6

        a.    Claims for Negligence Per Se are Not Governed by Rule 9 ........................ 7

        b.    In the Face of Conflicting Case Law, this Honorable Court has Previously Held
              Negligent Misrepresentation to not be Subject to Rule 9 ........................... 8

        c.    The Motion Does Not Actually Address the Plaintiffs' Claim for Negligent
              Misrepresentation in any Elemental Fashion ......................................... 10

V.      Argument: The Fraud-Centric Portions of the Complaint Satisfy the Heightened Pleading
        Standards of Rule 9 ............................................................................................. 11

        a.    The Plaintiffs Have Alleged What Mr. Postle Did, When He Did So, Where He Did
              So, and What He Gained Thereby ........................................................... 12

        b.    The Complaint Offers Detail Sufficient to Support a Racketeering Claim ............... 15

        c.    Mr. Postle is Amply on Notice of his Own Conduct ................................. 17

        d.    To the Extent Greater Detail is Necessary, the Plaintiffs Respectfully Seek Leave to
              Amend ................................................................................................... 19

VI.     Argument: Negligence Per Se is a Recognized Doctrine in California .......................... 22

VII.    Argument: Unjust Enrichment is a Recognized Cause of Action in California ............. 25

VIII.   Argument: Mr. Postle's Incorporation of the Other Defendants' Arguments
        is Unavailing ...................................................................................................... 27

IX.     Argument: As Argued in the Plaintiffs' Motion for Sanctions (DE #54), the Motion
        Should be Disregarded ........................................................................................ 29

X.      Conclusion ........................................................................................................ 30



## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alejo v. City of Alhambra*, 75 Cal. App. 4th 1180 (1999) ............................................................ 22

*Aranda v. County of Los Angeles*, 2020 WL 913422 (C.D. Cal. 2020).......................................... 8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .............................................................................. 4, 9, 12

*Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 752 (9th Cir. 2015)........................................ 26, 27

*Beaver v. Tarsadia Hotels*, 29 F. Supp. 3d 1294 (S.D. Cal. 2014)............................................ 23

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................................. 7

*Bly–Magee v. California*, 236 F.3d 1014 (9th Cir.2001)........................................................ 13, 15

*Bresee v. Los Angeles Traction Co.*, 149 Cal. 131 (1906) ......................................................... 24

*Carlin v. DairyAmerica, Inc.*, 978 F. Supp. 2d 1103 (E.D. Cal. 2013) ...................................... 10

*Castaneda v. Saxon Mortg. Services, Inc.*, 687 F. Supp. 2d 1191 (E.D. Cal. 2009) .................... 4

*Cooper v. Pickett*, 137 F.3d 616 (9th Cir.1997)......................................................................... 13

*Coury v. Caliber Home Loans, Inc.*, 2017 WL 476411 (N.D. Cal. 2017).................................. 23

*Decker v. GlenFed, Inc.*, 42 F.3d 1541 (9th Cir. 1994) ................................................................ 4

*DiVittorio v. Equidyne Extractive Indus.*, 822 F.2d 1242 (2d Cir.1987)...................................... 4

*Doane v. First Franklin Fin.*, 2012 WL 2129369 (E.D. Cal. 2012) ........................................... 16

*Doyle v. California Dep't of Corr. & Rehabs.*, 2014 WL 5524452 (N.D. Cal. 2014).................. 7

*Driscoll v. Cable Ry. Co.*, 97 Cal. 553 (1893) ......................................................................... 24

*Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350 (2010)..................................................... 27

*Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993 (9th Cir. 2010)............................................... 18, 19

*Elsner v. Uveges*, 34 Cal. 4th 915 (2004) .................................................................................. 7

*Fenn v. Clark*, 11 Cal. App. 79 (1909) ...................................................... 24

*Figone v. Guisti*, 43 Cal. App. 606 (Cal. Ct. App. 1919) .......................... 24

*Flood v. Miller*, 35 Fed. Appx. 701 (9th Cir. 2002) .................................. 18

*Hernandez v. County of Marin*, 2012 WL 1207231 (N.D. Cal. 2012) ....................................... 24

*In re BofI Holding, Inc. Sec. Litig.*, 2017 WL 2257980 (S.D. Cal. 2017) ................................. 13

*In re GSM Wireless, Inc.*, 2013 WL 4017123 (Bankr. C.D. Cal. 2013) ........................................ 26

*In re Intelligent Direct Mktg.*, 518 B.R. 579 (E.D. Cal. 2014) ...................................... 26

*Jordan v. Bank of Am., N.A.*, 396 F. Supp. 3d 922 (E.D. Cal. 2019)...................................... 22

*Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723 (2000) ......................... 25, 26

*McKune v. Santa Clara V. M. &. L. Co.*, 110 Cal. 480 (1895)............................ 24

*Melchior v. New Line Productions, Inc.*, 106 Cal. App. 4th 779 (2003) ..................................... 26

*Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333 (1998)............................... 22

*Midwest Commerce Banking Co. v. Elkhart City Ctr.*, 4 F.3d 521 (7th Cir.1993)..................... 13

*Nayab v. Capital One Bank (USA), N.A.*, 942 F.3d 480 (9th Cir. 2019) ............................... 18, 19

*Neubronner v. Milken*, 6 F.3d 666 (9th Cir.1993) ........................................ 13

*O'Campo v. Chico Mall, LP*, 758 F. Supp. 2d 976 (E.D. Cal. 2010).............................. 7

*Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007) ............................. 16

*Otworth v. Southern Pac. Transportation Co.*, 166 Cal. App. 3d 452 (1985)........................... 26

*Padilla v. Pomona Coll.*, 166 Cal. App. 4th 661 (2008).................................... 7

*Pedersen v. Greenpoint Mortg. Funding, Inc.*, 900 F. Supp. 2d 1071 (E.D. Cal. 2012) ............. 25

*Petersen v. Allstate Indem. Co.*, 281 F.R.D. 413 (C.D. Cal. 2012) ......................................... 8, 9

*Peterson v. Cellco Partnership*, 164 Cal. App. 4th 1583 (2008)................................. 26

*Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal. App. 4th 1105 (2014) ................. 25, 26



*Puri v. Khalsa*, 674 F. Appx. 679 (9th Cir. 2017) ........................................................................ 18

*Ramirez v. Nelson*, 44 Cal. 4th 908 (2008) ................................................................................ 23

*Randi W. v. Muroc Joint Unified Sch. Dist.*, 14 Cal. 4th 1066 (1997) ...................................... 24

*Rice v. Ctr. Point, Inc.*, 154 Cal. App. 4th 949 (2007) ............................................................... 23

*Ricon v. Recontrust Co.*, 2009 WL 2407396 (S. D. Cal. 2009) .................................................... 4

*Roberts v. Orange Glo*, 2014 WL 5780961 (E.D. Cal. 2014) ...................................................... 9

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985) ................................................................. 16

*Siemers v. Eisen*, 54 Cal. 418 (1880) ........................................................................................ 24

*Sierra-Bay Fed. Land Bank Assn. v. Superior Court*, 227 Cal. App. 3d 318 (1991) .................. 23

*Stauffer v. Westmoreland Obstetric & Gynecologic Associates, S.C.*,
     2000 WL 33128493 (N.D. Ill. 2000) ..................................................................................... 13

*Stein v. United R. R.*, 159 Cal. 368 (1911) ................................................................................ 24

*U.S. ex rel. Yannacopolous v. Gen. Dynamics,* 315 F. Supp. 2d 939 (N.D. Ill. 2004) .............. 13

*United States v. Aerojet Rocketdyne Holdings, Inc.*, 381 F. Supp. 3d 1240 (E.D. Cal. 2019) ...... 4

*United States v. Sierra Pac. Indus.*, 879 F. Supp. 2d 1096 (E.D. Cal. 2012) ............................ 22

*Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ....................................... *passim*

*Waldon v. Arizona Pub. Serv. Co.*, 642 Fed. Appx. 667 (9th Cir. 2016) ............................ 23, 24

*West v. JPMorgan Chase Bank*, 214 Cal. App. 4th 780 (2013) ................................................. 10

*White v. S. Cal. Edison Co.*, 25 Cal. App. 4th 442 (1994) ......................................................... 25

*Williams v. S. P. Co.*, 173 Cal. 525 (1916) ................................................................................ 24

*Woods v. Davol, Inc.*, 2017 WL 3421973 (E.D. Cal. 2017) ......................................................... 9

*Wool v. Tandem Computers Inc.*, 818 F.2d 1433 (9th Cir. 1987) ............................................... 18



**Statutes**

Cal. Evid. Code § 669 ................................................................................ *passim*

Cal. Penal Code § 337x .......................................................................................... 28

**Rules**

Federal Rule of Civil Procedure 8 .......................................................... 7, 9, 15, 19

Federal Rule of Civil Procedure 9 .......................................................... *passim*

Federal Rule of Civil Procedure 11 ............................................................... 29

Federal Rule of Civil Procedure 12 ......................................................... 3, 4, 29

**Treatises**

5 C. Wright & A. Miller, Federal Practice and Procedure § 1298 (1969) ................................... 18



Come now Veronica Brill ("Ms. Brill"), Kasey Lyn Mills ("Ms. Mills"); Marc Goone ("Mr. Goone"), Navroop Shergill ("Mr. Shergill"); Jason Scott ("Mr. Scott"); Azaan Nagra ("Mr. Nagra"); Eli James ("Mr. James"); Phuong Phan ("Mr. Phan"); Jeffrey Sluzinski ("Mr. Sluzinski"), Harlan Karnofsky ("Mr. Karnofsky"); Nathan Pelkey ("Mr. Pelkey"); Matthew Allen Holtzclaw ("Mr. Holtzclaw"); Jon Turovitz ("Mr. Turovitz"); Robert Young ("Mr. Young"); Blake Alexander Kraft ("Mr. Kraft"); Jaman Yonn Burton ("Mr. Burton"); Michael Rojas ("Mr. Rojas"); Hawnlay Swen ("Mr. Swen"); Thomas Morris III ("Mr. Morris"); Paul Lopez ("Mr. Lopez"); Rolando Cao ("Mr. Cao"); Benjamin Jackson ("Mr. Jackson"); Hung Sam ("Mr. Sam"); Corey Caspers ("Mr. Caspers"); Adam Duong ("Mr. Duong"); Dustin McCarthy ("Mr. McCarthy"); Chou Vince Xiong ("Mr. Xiong"); Brian Olson ("Mr. Olson"); Cameron Smith ("Mr. Smith"); Jordan Diamond ("Mr. Diamond"); Aronn Solis ("Mr. Solis"); Alisha Daniels-Duckworth ("Ms. Daniels-Duckworth"); Christian Soto Vasquez ("Mr. Vasquez"); Andrew Hernandez ("Mr. Hernandez"); Darrell Steed ("Mr. Steed"); Arish S. Nat ("Mr. Nat"); Kyle Kitagawa ("Mr. Kitagawa"); Brian Michael Raasch ("Mr. Raasch"); Zeev Malkin ("Mr. Malkin"); David Crittenton ("Mr. Crittenton"); Patrick Laffey ("Mr. Laffey"); Paras Singh ("Mr. Singh"); Firas Bouri ("Mr. Bouri"); Idris M. Yonisi ("Mr. Yonisi"); Joshua Whitesell ("Mr. Whitesell"); David Duarte ("Mr. Duarte"); Harun Unai Begic ("Mr. Begic"); Brad Kraft ("Mr. Kraft"); Taylor Carroll ("Mr. Carroll"); Elias AbouFares ("Mr. AbouFares"); Tyler Denson ("Mr. Denson"); Andrew Lok ("Mr. Lok"); Jake Rosenstiel ("Mr. Rosenstiel"); Anthony Ajlouny ("Mr. Ajlouny"); Hector Martin ("Mr. Martin"); Dale Menghe ("Mr. Menghe"); Scott Schlein ("Mr. Schlein"); Auguste Shastry ("Mr. Shastry"); Nicholas Colvin ("Mr. Colvin"); Jason Markwith ("Mr. Markwith"); Brian Watson ("Mr. Watson"); Shane Gonzales ("Mr. Gonzalez"); Katherine Stahl ("Ms. Stahl"); Mike Nelson ("Mr. Nelson");



Brandon Steadman ("Mr. Steadman"); Bryant Miller ("Mr. Miller"); Hong Moon ("Mr. Moon"); Matthew Gouge ("Mr. Gouge"); Nicholaus Wooderson ("Mr. Wooderson"); Carlos Welch ("Mr. Welch"); Ariel Reid ("Mr. Reid"); Dan Mayer ("Mr. Mayer"); Anthony Giglini ("Mr. Giglini"); Ryan Jaconetti ("Mr. Jaconetti"); Ariel Cris Manipula ("Mr. Manipula"); Trenton Sidener ("Mr. Sidener"); James John O'Connor ("Mr. O'Connor"); Patrick Vang ("Mr. Vang"); Marcus Davis ("Mr. Davis"); Adam Cohen ("Mr. Cohen"); Derick Cole ("Mr. Cole"); Aaron McCormick ("Mr. McCormick"); Brennen Alexander Cook ("Mr. Cook"); Michael Phonesavnh Rasphone ("Mr. Rasphone"); Benjamin Teng ("Mr. Teng"); Scott Sorenson ("Mr. Sorenson"); Anthony Hugenberg ("Mr. Hugenberg"); and Billy Joe Messimer ("Mr. Messimer") (collectively, the "Plaintiffs," with each sometimes being known as a "Plaintiff"), by and through counsel, and in opposition to the renewed motion to dismiss (the "Motion," as found at DE #50, with the pleading to which it is directed being known as the "Complaint," as found at DE #40) filed by Michael L. Postle ("Mr. Postle" or the "Defendant"),[1] state as follows:

## I.   Introduction

Mr. Postle stole hundreds of thousands of dollars in the largest known cheating scandal in the history of broadcast poker. The evidence of his cheating is quite literally on tape, with hundreds of hours of footage showing him gawking at a phone screen concealed in his lap so as to learn the card holdings of his fellow players. The arrogance of his cheating is unparalleled, with him having done so at such an aggressive rate, and with such a devil-may-care inclination, as to create a trail of statistical evidence alone sufficient to reveal his tortious tendencies. And

---

[1] There are other defendants to this action who have also filed motions seeking dismissal. Their respective motions will be addressed under separate cover.



VerStandig
LAW FIRM

yet he now argues he should not be held civilly liable to those from whom he stole because their 54-page Complaint does not place him on sufficient notice of the wrongs for which he is being sued. This contention – as well as each of the other arguments put forth in the Motion – is ultimately as unavailing as Mr. Postle's now-debunked effort to con others into believing he is anything more than a middling poker player with dishonest inclinations.

As discussed at greater length below, the Motion merits denial because (i) the Plaintiffs' causes of action have been pleaded with extensive specificity more-than-amply satisfying the rigors of Federal Rule of Civil Procedure 9; (ii) controlling case law does not permit one knowledgeable of his own fraudulent conduct to escape liability on the basis of insufficient pleading concerning the concealed intricacies of that fraudulent conduct; (iii) to the extent any greater modicum of detail is required, the Plaintiffs are prepared to amend their already-lengthy Complaint to include the same; (iv) the two causes of action Mr. Postle insists to not be recognized are, in fact, valid claims under California law; and (v) Mr. Postle's effort to incorporate by reference the briefs of other parties, where such briefs do not actually discuss the liability of a poker player to those whom he has unlawfully swindled, is immaterial.

The Plaintiffs also note that Mr. Postle's Motion does not appear to specifically address Count XI of the Complaint, and there is a currently-pending motion for sanctions that seeks to strike the Motion since it violates this Honorable Court's prohibition on attorneys ghostwriting for lay persons.

## II.    Standard

As this Honorable Court has observed of the standard governing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6):



On a Rule 12(b)(6) motion, the inquiry before the court is whether, accepting the allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor, the plaintiff has stated a claim to relief that is plausible on its face. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." A complaint that offers mere "labels and conclusions" will not survive a motion to dismiss.

*United States v. Aerojet Rocketdyne Holdings, Inc.*, 381 F. Supp. 3d 1240, 1245 (E.D. Cal. 2019) (Shubb, J.) (citing and quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

As various – but not all – counts of the Complaint sound in fraud, a heightened pleading standard controls those claims:

Under the heightened pleading requirements for claims of fraud under Federal Rule of Civil Procedure 9(b), "a party must state with particularity the circumstances constituting the fraud." The plaintiffs must include the "who, what, when, where, and how" of the fraud. Additionally, "[w]here multiple defendants are asked to respond to allegations of fraud, the complaint must inform each defendant of his alleged participation in the fraud."

*Castaneda v. Saxon Mortg. Services, Inc.*, 687 F. Supp. 2d 1191, 1199–200 (E.D. Cal. 2009) (Shubb, J.) (quoting Fed. R. Civ. P. 9(b); *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); citing *Decker v. GlenFed, Inc.*, 42 F.3d 1541, 1548 (9th Cir. 1994); quoting *Ricon v. Recontrust Co.*, 2009 WL 2407396, at *3 (S. D. Cal. 2009) (quoting *DiVittorio v. Equidyne Extractive Indus.*, 822 F.2d 1242, 1247 (2d Cir.1987))).

### III.      Summary of Pertinent Allegations

This case concerns Mr. Postle's use of electronic devices to cheat at broadcast poker games from July 2018 through October 2019. *See* Complaint, DE #40, at ¶¶ 1, 119, 205.[2] By accessing real-time information – including the concealed hand holdings of his adversaries – through his use of a cell phone buried in his lap, Mr. Postle was able to steal hundreds of thousands of dollars from the Plaintiffs herein, who were his fellow players. *Id.* at ¶¶ 1, 127, 129-130.

Mr. Postle's cheating is evidenced not just by footage of his gazing at his concealed cell phone before making various decisions in poker hands but, too, by statistical analysis of his play. *Id.* at ¶¶ 118-124; 129-130; 132-134. Indeed, Mr. Postle did not heed the timeless lesson of Icarus, instead cheating in such a continuous and egregious manner as to leave behind a data set not suggestive of a generally-winning poker player or even an exemplary poker player but, rather, one exponentially greater than that the best poker players in the world. *Id.* at ¶¶ 118-123. In this sense, his own greed blazed its own trail of incrimination, with statistical evidence running parallel to the hundreds of hours of video evidence. *Id.*

There is also situation-specific evidence of Mr. Postle's cheating, with him on one occasion having gained knowledge of a technical mishap in his game's live broadcast and demonstrated the same in real time. *Id.* at ¶¶ 135-141. On this anecdotal occasion, the electronic

---

[2] The Complaint herein is somewhat voluminous, with numerous specific allegations being made in support of the Plaintiffs' case. While citations to certain paragraphs of the Complaint are provided herein to support the general summary provided, the Complaint does have a narrative structure with various allegations building on one another, and it is thus respectfully noted the citations provided should not be construed as the sole allegations existing in support of the correlative contentions. Mr. Postle's fraud was extensive; in furnishing this summary, the Plaintiffs endeavor to balance a desire to provide a synopsis of their core claims – with accompanying citations – and a disinclination to restate the whole of their Complaint.



table's card reader malfunctioned, failing to detect two of each player's respective four concealed cards; Mr. Postle's violent real-time spasm in which he tried to correct this error (of which he would not have had knowledge but for his cheating), and subsequent remarks in a commentator's booth, offer further evidence of his scheme. *Id.*

In their Complaint, the Plaintiffs allege every single date on which Mr. Postle cheated (*id.* at ¶ 205); the location where Mr. Postle cheated (*id.* at ¶ 2); how Mr. Postle cheated (*id., passim*); and what he gained by cheating (*id*. at ¶¶ 1, 188). The Plaintiffs also allege how their losses are not confined to the monies won by Mr. Postle but, too, the monies they paid over to participate in a putatively fair and honest broadcast card game. *Id.* at ¶¶ 184-187.

The Complaint is rife with other allegations – many included to address a previous motion by Mr. Postle asserting a lack of specificity in the Plaintiffs' original pleading – supporting the Plaintiffs' claims, further detailing Mr. Postle's scheme, and setting out extensive details of just how the Plaintiffs were duped. *Id., passim*.  At core, though, this is a case about Mr. Postle's cheating scheme, the laws he violated in carrying out that scheme, and the both legal and equitable rights of his unsuspecting victims.

## IV.     Argument: Counts III and IV of the Complaint are Not Subject to the Rigors of Rule 9

The Motion appears to be premised upon a core error of law inasmuch as Counts III and IV of the Complaint are concerned, with Mr. Postle seeking dismissal of those claims because the Plaintiffs allegedly do not comply with the heightened pleading standards of Federal Rule of Civil Procedure 9. While the Complaint certainly does conform to those more robust standards, such is immaterial, as Count IV is for negligence per se, which is not subject to any heightened



pleading requirement.[3] Further, while Count III is for negligent misrepresentation, the more persuasive case law in this circuit – including from this Honorable Court – holds such a claim is, too, not subject to the rigors of Federal Rule of Civil Procedure 9.

### a. Claims for Negligence Per Se are Not Governed by Rule 9

Negligence per se is a claim derivative of common law negligence. *Padilla v. Pomona Coll.*, 166 Cal. App. 4th 661, 674–75 (2008) ("Evidence Code section 669, which codifies the common law negligence per se rule, allows proof of a statutory violation to create a presumption of negligence in certain circumstances.") (citing *Elsner v. Uveges*, 34 Cal. 4th 915, 920 (2004)).

Common law claims for negligence, in turn, are subject to the standards of Federal Rule of Civil Procedure 8, not the heightened standards governing claims for fraud. *See, e.g., O'Campo v. Chico Mall, LP*, 758 F. Supp. 2d 976, 981 (E.D. Cal. 2010) ("In contrast, Twombly held that the model pleading for negligence demonstrated the type of pleading that satisfies Rule 8.") (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 565 n.10 (2007)).

Undersigned counsel is not aware of any authority – and the Motion does not cite any case law – suggesting a claim for negligence per se is subject to the rigors of Federal Rule of Civil Procedure 9. To the contrary, case law anecdotally evidences such claims being evaluated within the prism of Federal Rule of Civil Procedure 8. *See, e.g., Doyle v. California Dep't of Corr. & Rehabs.*, 2014 WL 5524452, at *6 (N.D. Cal. 2014) (analyzing a claim for negligence

---

[3] The Motion also seeks dismissal of Count IX on the theory that claim does not conform to the pleading standards of Federal Rule of Civil Procedure 9. As noted *infra*, Mr. Postle is not a party to Count IX of the Complaint, which is for libel. To the extent this is a typographical error and he intends to attack Count XI of the Complaint, that claim – like Count IV – is for negligence per se, and is thus subject to the same standard under Federal Rule of Civil Procedure 8.

per se under Federal Rule of Civil Procedure 8); *Aranda v. County of Los Angeles*, 2020 WL 913422, at *7 (C.D. Cal. 2020) (same).

Indeed, it is altogether unclear why Mr. Postle believes a claim for negligence per se should be subject to a pleading standard that, by its own express terms, only governs causes of action for "fraud or mistake." Fed. R. Civ. P. 9(b). His Motion *ipso facto* reaches this conclusion without any legal support, and it is a conclusion that does not reconcile with relatively clear and altogether common precedent or the plain language of the rule itself.

### b. In the Face of Conflicting Case Law, this Honorable Court has Previously Held Negligent Misrepresentation to not be Subject to Rule 9

Concerning the claim for negligent misrepresentation, there is conflicting case law concerning the particularity, *vel non*, with which it must be pleaded (though the Motion does not acknowledge or address such conflict). However, as a sister court has observed of efforts to subject claims for negligent misrepresentation to a heightened pleading standard, "After conducting its own research, this Court concludes that the holding that negligent misrepresentations must meet the heightened pleading requirements of Rule 9(b) appears to be cut from whole cloth." *Petersen v. Allstate Indem. Co.*, 281 F.R.D. 413, 416–17 (C.D. Cal. 2012). Indeed:

> Rule 9(b) is expressly limited to allegations of "fraud or mistake." Because the California tort of "negligent misrepresentation" has a critically different element from the tort of "fraud," analyzing negligent misrepresentation under Rule 9(b) is contrary to both the express language and policy of the statute.
>
> …
>
> Thus, the Court holds that the California tort of negligent misrepresentation need not satisfy the heightened pleading standard of Rule 9(b).

*Petersen*, 281 F.R.D. at 417-418 (C.D. Cal. 2012) (quoting Fed. R. Civ. P. 9(b)).



The *Peterson* Court's holding is not an outlier – it has been adopted by this Honorable Court on multiple occasions. *See, e.g., Woods v. Davol, Inc.*, 2017 WL 3421973, at *7 (E.D. Cal. 2017) ("Based on the court's persuasive reasoning in Petersen, and falling in with the more recent trend of authority, the court now considers whether plaintiff has satisfied the elements of a negligent misrepresentation claim under Rule 8."); *Roberts v. Orange Glo*, 2014 WL 5780961, at *2 (E.D. Cal. 2014) (Shubb, J.) ("While it has not decided the issue, the Ninth Circuit has held that 'only allegations ... of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b).' 'Because the California tort of 'negligent misrepresentation' has a critically different element from the tort of 'fraud,' analyzing negligent misrepresentation under Rule 9(b) is contrary to both the express language and policy of the statute.' Accordingly, the court will not apply a heightened pleading standard to plaintiffs' claim for negligent misrepresentation and will instead inquire whether plaintiffs state a plausible claim for relief under Iqbal.") (quoting *Vess*, 317 F.3d at 1105; *Petersen*, 281 F.R.D. at 417; citing *Iqbal*, 556 U.S. at 678).

Thus, the Plaintiffs respectfully suggest their lone claim for negligent misrepresentation (Count III) ought to be evaluated under the standard of Federal Rule of Civil Procedure 8, for the very reasons articulated by the *Peterson* Court and its progeny. However, to the extent this Honorable Court believes otherwise, they equally maintain the claim is backed by sufficient detail to adhere to the more rigorous pleading standard, as discussed *infra* in connection with this brief's assessment of the fraud-centric causes of action subject to Federal Rule of Civil Procedure 9.



### c.  The Motion Does Not Actually Address the Plaintiffs' Claim for Negligent Misrepresentation in any Elemental Fashion

The standard governing a claim for negligent misrepresentation may be ultimately immaterial, however, as the Motion does not actually discuss that claim in any substantive manner. Mr. Postle is not alleging any element of a claim for negligent misrepresentation to have not been addressed in the Complaint, nor does he point to any element where greater particularity is needed to meet the governing pleading standard (under either of the aforementioned rules). It is thus difficult to credit the Motion as actually addressing Count III of the Complaint in any manner that invites rebuttal herein.

In the interest of thoroughness, however, California law provides five elements for a claim of negligent misrepresentation:

> (1) the defendant made a false representation as to a past or existing material fact; (2) the defendant made the representation without reasonable ground for believing it to be true; (3) in making the representation, the defendant intended to deceive the plaintiff; (4) the plaintiff justifiably relied on the representation; and (5) the plaintiff suffered resulting damages.

*Carlin v. DairyAmerica, Inc.*, 978 F. Supp. 2d 1103, 1111 (E.D. Cal. 2013) (citing *West v. JPMorgan Chase Bank*, 214 Cal. App. 4th 780, 792 (2013)).

Here, the Plaintiffs allege (1) Mr. Postle represented his play in the various relevant poker games to be honest (Complaint at ¶¶ 226-227), (2) Mr. Postle made this representation without a reasonable basis for believing it is true, inasmuch as he was aware of his own cheating (Complaint at ¶ 231); (3) these representations were made with an intent to deceive the Plaintiffs by conning them into believing they were playing in honest card games and, *ergo*, continuing to apply monies toward such games (Complaint at ¶ 234); (4) the Plaintiffs relied on these representations be playing in the subject poker games (Complaint at ¶ 235); and (5) the



Plaintiffs have been damaged in the form of monies paid to the casino to administer the card games, monies swindled by Mr. Postle, and the loss of an opportunity to earn monies through honest and fair card games (Complaint at ¶ 236).

Thus, while the Motion does not actually challenge the sufficiency of the Plaintiffs' claim for negligent misrepresentation in any identifiable fashion,[4] the record is nonetheless clear the Complaint makes out such a claim in accord with governing law. And as to Count III of the Complaint, the Motion accordingly merits denial.

## V.   Argument: The Fraud-Centric Portions of the Complaint Satisfy the Heightened Pleading Standards of Rule 9

Mr. Postle's core contention is that the Complaint does not satisfy the rigors of Federal Rule of Civil Procedure 9 inasmuch it does not sufficiently allege his wrongful acts in detail. Yet in making this assertion – seemingly aware of the Complaint's breadth and detail – Mr. Postle also elects to attack the validity of the Plaintiffs' contentions, labeling the same "spurious" and "confused." Motion at 7:17, 9:5. In so doing, it seems Mr. Postle's argument is a hybrid of sorts, wherein he (tacitly) acknowledges the Complaint to be rife with details, but wishes to urge those details ought not be credited, and at the same time posits the Complaint lacks sufficient detail when stripped of the allegations he urges not be credited.

---

[4] There is an inherent difficulty in rebutting that which the Motion does not actually address in any cognizable fashion. If Mr. Postle's Motion argued, by way of anecdote only, the reliance element to not be present in the Complaint, the Plaintiffs would be able to delve into a deeper discussion of how reliance is pleaded not merely in Count III but, too, in myriad allegations in the portion of the Complaint preceding the formal recitation of counts. The Plaintiffs thus respectfully urge that while they furnish this overview of their claim in the interests of caution, the validity of the subject claim is not actually raised in the Motion and is not accordingly not instantly before this Honorable Court.



As noted *supra*, the *Iqbal* standard governs Mr. Postle's Motion: the Plaintiffs are afforded the beneficial assumption of "the allegations in the complaint," together with "all reasonable inferences in the plaintiff's favor." If Mr. Postle wishes to assert the Plaintiffs' factual contentions are "spurious" or "confused," the summary judgment phase of this matter will furnish a proper opportunity for such. But for instant purposes, an argument on the merits is inappropriate.

Taking the Complaint's allegations as true,[5] the pleading satisfies the rigors of Federal Rule of Civil Procedure 9, and the Motion merits denial for the following reasons:

### a. The Plaintiffs Have Alleged What Mr. Postle Did, When He Did So, Where He Did So, and What He Gained Thereby

The Motion relies heavily on the United States Court of Appeals for the Ninth Circuit's holding in *Vess*. The Plaintiffs concur the *Vess* Court's standard governs this case, and simply note the Motion seems to overlook that the Complaint more-than-amply satisfies the rigors of that case and its governing holdings.

As noted in the Motion itself, the *Vess* Court speaks to the exacting requirements of Federal Rule of Civil Procedure 9 and the policy-centric rationale for such requirements: ensuring a defendant is properly on notice of what is being alleged. Specifically:

> Rule 9(b) demands that, when averments of fraud are made, the circumstances constituting the alleged fraud "be 'specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong.'" Averments of fraud must be

---

[5] The Plaintiffs are aware their allegations must be "plausible" under the *Iqbal* standard. Mr. Postle has not attacked the plausibility of their claims; he has merely labeled them "spurious" and "confused." Given that the allegations are all derivative of (i) video evidence; (ii) statistical evidence; and (iii) firsthand accounts, it is respectfully suggested the plausibility rigor is not at issue instantly.

accompanied by "the who, what, when, where, and how" of the misconduct charged.

*Vess*, 317 F.3d at 1106 (quoting *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir.2001) (quoting *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir.1993)); *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.1997)).

At the same time, Federal Rule of Civil Procedure 9 does not require a litigant present the whole of his or her evidence in a pleading. *See, e.g., U.S. ex rel. Yannacopolous v. Gen. Dynamics,* 315 F. Supp. 2d 939, 945 (N.D. Ill. 2004) ("Rule 9(b) does not require that plaintiff explain his entire case, only that he state the actions that allegedly constitute fraud.") (citing *Midwest Commerce Banking Co. v. Elkhart City Ctr.*, 4 F.3d 521, 524 (7th Cir.1993)); *In re BofI Holding, Inc. Sec. Litig.*, 2017 WL 2257980, at *12 (S.D. Cal. 2017) ("The PSLRA and Rule 9(b) only require that Lead Plaintiff provide particularized reasons why a statement was false or misleading at the time it was made, not that Lead Plaintiff prove its entire case in the complaint and without the benefit of reasonable inferences."); *Stauffer v. Westmoreland Obstetric & Gynecologic Associates, S.C.*, 2000 WL 33128493, at *1 (N.D. Ill. 2000) ("But she does not need to argue her entire case in her pleadings, and she should not do so.").

Adhering to the *Vess* standards, the Plaintiffs have identified the "who, what, when, where, and how" of their claims. They have done so with more-than-ample detail to place Mr. Postle on notice of that for which he is being sued, but also in a manner that is mindful a Complaint is not an appropriate forum to try an entire case (and, indeed, the over-inclusion of evidence can lead to a pleading being stricken, as happened in the *Stauffer* case).

The "who" requirement does not seem to be genuinely contested in the Motion: the fraudulent conduct complained of was undertaken by Mr. Postle. *See* Complaint, *passim*.



Notably, while the Complaint offers to name Mr. Postle's confederate should this Honorable Court feel such to be necessary at this juncture (Complaint at ¶ 99), the Motion does not ask the Plaintiffs to do so and does not suggest Mr. Postle to be ignorant as to the identity of his confederate.

The "what" element is also addressed with requisite particularity. The Complaint alleges Mr. Postle cheated at games of poker through his use of an electronic communications device. Complaint at ¶¶ 1, 127-130, 132, 134. The Complaint describes in appreciable detail how the subject games were played at a poker table imbued with radio-frequency identification abilities (Complaint at ¶¶ 105-106, 134), how Mr. Postle was able to view other players' concealed cards on his cellular telephone in real time (Complaint at ¶¶ 129-130, 132, 136, 141, 145), and how Mr. Postle used this illicit and superior knowledge to garner the Plaintiffs' money by cheating (Complaint at ¶¶ 1, 117-127). What Mr. Postle is being accused of herein is rather simple: using his cellular telephone, to cheat at games of poker played at a table with radio-frequency identification technology, so as to steal monies from the Plaintiffs. These allegations are both clear and detailed in the Complaint, and Mr. Postle is more-than-amply on notice of the same.

With regard to the "when" requirement, the Plaintiffs foresaw this precise aspect of Mr. Postle's Motion and took care to specifically allege every single date on which he is alleged to have cheated. Complaint at ¶ 205. The Plaintiffs were also careful to do so in the first count of their Complaint, so such dates would be incorporated by reference into subsequent counts. There are 68 specific dates identified in the Complaint; this certainly covers the "when" rigor of the *Vess* Court.



The "where" requirement is disposed of with similar ease: the Complaint makes clear the entirety of Mr. Postle's at-issue conduct occurred at Stones Gambling Hall in Citrus Heights, California. Complaint at ¶¶ 2, 103, 132, 207.

This leaves the "how" rigor. What the Plaintiffs allege is that Mr. Postle cheated by using his cellular telephone to learn the concealed cards of the Plaintiffs. Complaint at ¶¶ 129-130, 132, 136, 141, 145.

To be sure, the Plaintiffs were cognizant their Complaint would need to include the "who, what, when, where, and how" details of Mr. Postle's conduct. The Complaint even contains a series of consecutive allegations meant to flag the Plaintiffs' cognizance of these issues (Complaint at ¶¶ 207-210), as well as the aforementioned specific enumeration of dates on which Mr. Postle cheated in poker games. And given the expansive nature of the Complaint, it is, candidly, difficult to believe Mr. Postle is not on "notice of the particular misconduct ... so that [he] can defend against the charge and not just deny that [he has] done anything wrong.'" *Vess*, 317 F.3d at 1106 (quoting *Bly–Magee*, 236 F.3d at 1019).

### b.  The Complaint Offers Detail Sufficient to Support a Racketeering Claim

The Motion also challenges the sufficiency of the Complaint's racketeering claim, specifically highlighting the underlying crime of wire fraud alleged by the Plaintiffs. Under governing law, only the fraud element of this count is subject to a heightened pleading standard; the rest of the Plaintiffs' racketeering claim is measured by the rigors of Federal Rule of Civil Procedure 8. On all elements, however, the claim is presented in a manner sufficient to survive Mr. Postle's challenge.

The United States Court of Appeals for the Ninth Circuit has made clear, in connection with a racketeering claim premised upon wire fraud, "The only aspects of wire fraud that



require particularized allegations are the factual circumstances of the fraud itself." *Odom v. Microsoft Corp.*, 486 F.3d 541, 554 (9th Cir. 2007). *See also*, *Doane v. First Franklin Fin.*, 2012 WL 2129369, at *7 (E.D. Cal. 2012) (same).

As discussed *supra*, the Plaintiffs have presented their allegations of fraud with particularity more-than-sufficient to survive the rigors of Federal Rule of Civil Procedure 9.

Since the Motion lists other rigors of a racketeering claim without asserting the Complaint to want for sufficient correlative allegations, it is difficult to surmise if Mr. Postle is challenging the adequacy of the Plaintiffs' averments on those fronts.[6] However, it nonetheless bears mention a racketeering claim requires "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Odom*, 486 F.3d at 547 (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).

Here, the "conduct" element is satisfied by the Complaint's allegation Mr. Postle and his confederate:

> …used one or more instrumentalities of wire transmissions to relay to Mr. Postle, while playing in the Stones Live Poker games, information concerning the concealed card holdings of other players in the game, with such being transmitted for the express purpose of aiding Mr. Postle in a scheme to make money from such other players by fraudulently cheating in such game…

Complaint at ¶ 201.

The "enterprise" giving rise to this racketeering scheme is defined as Mr. Postle and his confederate(s). Complaint at ¶ 211. The Plaintiffs specifically allege the existence of at least one confederate, and offer to identify that person should this Honorable Court wish them to do so,

---

[6] As noted *supra*, since the Motion does not formally raise the sufficiency of the manner in which these other elements are pleaded, the Plaintiffs would urge the same is not instantly before this Honorable Court. *See, supra,* n. 4.



so as to address any concerns Mr. Postle acted as a so-called "lone wolf" and not as part of an enterprise. Complaint at ¶ 99.

The "pattern" requirement is addressed through the Plaintiffs' allegations of the dates on which the criminal activity occurred. Specifically, the Complaint enumerates 68 dates, over the course of more than a full year, on which Mr. Postle and his confederate(s) committed wire fraud as part of their ongoing enterprise. Complaint at ¶ 205.

Finally, the "racketeering activity" is, here, the predicate act of wire fraud. As noted *supra*, Mr. Postle's fraud has been discussed in detail, and his use of a cellular telephone and a radio-frequency identification-enabled poker table – both wire communication devices – was omnipresent during, and constantly utilized in, the fraudulent conduct. Complaint at ¶¶ 200-202.

Together, these allegations amply give rise to a claim for racketeering. And while the Plaintiffs believe each to have been pleaded with specificity sufficient to address the rigors of Federal Rule of Civil Procedure 9, they likewise maintain – per *Odom* and its progeny – only the fraud element of such a claim need actually satisfy this heightened standard. Accordingly, the Motion's attack on Count I of the Complaint merits denial.

### c.  Mr. Postle is Amply on Notice of his Own Conduct

Though the Plaintiffs believe their Complaint contains more-than-sufficient detail to meet the rigors of Federal Rule of Civil Procedure 9, they also note this is the precise sort of case where the governing standard is relaxed on account of Mr. Postle's cognizance of his own conduct and the machinations underlying that conduct. Case law makes clear a swindler endeavoring to conceal her or his precise *modus operandi* cannot take shelter in the partial-naivete of swindled victims, and such case law is very much applicable *sub judice*.



As the United States Court of Appeals for the Ninth Circuit has observed of fraud-specific claims where finite details of a scheme are uniquely within the knowledge of an opposing party:

> Even under the more rigid pleading standard of Federal Rule of Civil Procedure 9, however, the pleader is not required to allege facts that are "peculiarly within the opposing party's knowledge," and allegations "based on information and belief may suffice," "so long as the allegations are accompanied by a statement of facts upon which the belief is founded."

*Nayab v. Capital One Bank (USA), N.A.*, 942 F.3d 480, 493–94 (9th Cir. 2019) (quoting *Wool v. Tandem Computers Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987), overruled on other grounds as stated in *Flood v. Miller*, 35 Fed. Appx. 701, 703 n.3 (9th Cir. 2002), (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1298, at 416 & n.96 (1969)); *Puri v. Khalsa*, 674 F. Appx. 679, 687 (9th Cir. 2017).

Anticipating Mr. Postle would attack their Complaint as lacking sufficient detail, no matter how much detail they included therein, the Plaintiffs referenced this doctrine in their Complaint. Complaint at ¶ 131. However, in assessing the Motion, it is increasingly clear this doctrine need not be reached, as the Complaint contains factual allegations more-than-adequate to address the various grievances of Mr. Postle, who appears more inclined to argue with the merits of those allegations than to address the Complaint as a whole and acknowledge its inclusion of allegations demonstrative of his fraud.

The Motion relies on *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993 (9th Cir. 2010) for the proposition the allowance of relaxed pleading, where a litigant is aware – and uniquely in control of – evidence supporting his own fraud, ought not apply herein. Specifically, the Motion notes:

In *Ebeid*, the plaintiff attempted to rely on the same line of cases that Plaintiffs do in this case, arguing that he could not meet the requirements of Rule 9(b) in a False Claims Act case because the allegedly false billing information underlying the False Claims allegations was solely in the defendant health care provider's possession. **The Ninth Circuit held that where the defendant failed to allege any specific instance of false billing submissions, the date of that billing, or the people involved, the Rule must not be relaxed.** The court found that to relax Rule 9(b)'s leading requirements simply because a plaintiff asserts he lacked the information to plead adequately due to that information being in the hands of a defendant would swallow the Rule entirely. Accordingly, dismissal of the *Ebeid* plaintiff's complaint was affirmed.

Motion at 10:21-11:6 (emphasis added).

Respectfully, it is difficult to understand how that holding is at-all applicable to this case. Mr. Postle correctly notes *Ebeid* invited dismissal because the plaintiff therein could not cite any specific instance of wrong, the date(s) of any wrong, or the people involved in any wrong. Here, the Complaint literally recites every single date on which Mr. Postle engaged in fraudulent conduct, the mechanics of his fraud, the precise location where he did so, and how he worked with a confederate (who the Plaintiffs have offered to name).

Ultimately, the applicability of the doctrine echoed by the *Nayab* Court is of no moment, since the Complaint is pleaded with requisite particularity. However, it bears notation that even if some element of the Complaint is found to be lacking, that doctrine nonetheless permits the case to proceed, and the very case law cited by Mr. Postle actually supports this contention.

> **d.  To the Extent Greater Detail is Necessary, the Plaintiffs Respectfully Seek Leave to Amend**

The Plaintiffs have endeavored to place enough detail in their Complaint so as to satisfy the pleading rigors of this Honorable Court and to fairly put Mr. Postle on notice of the actions for which he is being sued. In doing so, they have been cognizant a pleading is supposed to comply with the rigors of Federal Rule of Civil Procedure 8 (and, on fraud-centric counts,



Federal Rule of Civil Procedure 9), while also being cognizant their Complaint is not to be the whole of their case-in-chief, is not intended to contain the entirety of their evidentiary disclosures, and is not intended to take on a Homerian or Dickensian volume. However, to the extent some greater degree of pleading is required, the Plaintiffs are prepared to produce the same, and respectfully seek leave to do so.

Specifically, and without limitation, the Plaintiffs can amend their Complaint to (i) enumerate every single date on which each individual Plaintiff was swindled out of monies in a poker game with Mr. Postle; (ii) identify the sum of Mr. Postle's illicit proceeds correlative to each poker game in which he cheated; (iii) discuss – and analyze – myriad more poker hands in which Mr. Postle's cheating is anecdotally and analytically evident; (iv) provide greater statistical analysis of Mr. Postle's play during the broadcast games in which he cheated, and juxtapose the same statistics to those of some of the finest poker players in the world; (v) identify – by timestamp – all of the occasions during every single game when Mr. Postle was caught on camera staring at the cell phone screen buried in his lap; (vi) provide expert analysis – from various individuals generally regarded as being amongst the preeminent professional poker players in the world – as to why Mr. Postle's situation-specific decision-making is irrational and statistically-certain to invite midterm and long-term monetary losses of appreciable size unless that decision-making is informed by the receipt of illicit information as part of a pattern and practice of cheating; (vii) identify the individual the Plaintiffs are prepared to allege to be Mr. Postle's chief confederate, inclusive of a discussion of demonstrative efforts undertaken by that individual in support of the fraudulent enterprise; (viii) juxtapose, in greater detail, Mr. Postle's known tendencies as a generally-mediocre and oftentimes-losing poker player, when not able to cheat through utilization of electronic devices, with his results when



cheating in the games at issue *sub judice*; and (ix) identify various acts of dishonesty Mr. Postle has engaged following the revelation of his cheating behavior, as part of a scheme to conceal and coverup his activities.

      The Plaintiffs can also point to evidence tying Mr. Postle to Russ Hamilton, the individual who operated the largest cheating scandal in the known history of online poker. They can further speak to efforts Mr. Postle previously undertook to cheat at least one purveyor of online poker in the United States, showing Mr. Postle's propensity to engage in cheating activities where and when possible. And they can also allege how Mr. Postle has been banned from setting foot upon the property of dozens of North American casinos, with such prohibition coming even before Mr. Postle started cheating in the poker games at issue in this case.

      To be sure, the foregoing is not an exhaustive list of that which the Plaintiffs could plead in an amended filing if this Honorable Court believes such to be necessary. While the Plaintiffs look forward to taking discovery in this case, it is also a case where they believe the evidence they already have, coupled with the testimony of expert witnesses they have already engaged, would be sufficient to garner a finding of Mr. Postle's liability by a preponderance of the evidence. They were cheated – on camera – by an individual either too reckless or too greedy to keep his illicit winnings within any statistical range possible for even the best poker players in the world; both they and Mr. Postle very much know what allegations are at issue in this case.

      Thus while the Plaintiffs believe their Complaint is more-than-sufficient in its current form, and have a strong desire to not expand it to a document as dense and lengthy as a work of Tolstoy or Dostoevsky, they do respectfully seek leave to amend if this Honorable Court believes they must present more in order to proceed with this case.



## VI.      Argument: Negligence Per Se is a Recognized Doctrine in California

Mr. Postle argues the Plaintiffs' claims for negligence per se fail because it is an evidentiary presumption and not a cause of action.[7]  In making this argument, Mr. Postle relies on three cases wholly inapplicable to the matter *sub judice* and ignores the sizeable case law supporting claims for negligence per se under California law.

As this Honorable Court has previously noted of California's allowances of claims for negligence per se and the requisite elements of such claims:

> To state a cause of action under the negligence per se doctrine, the plaintiff must plead four elements: (1) the defendant violated a statute or regulation, (2) the violation caused the plaintiff's injury, (3) the injury resulted from the kind of occurrence the statute or regulation was designed to prevent, and (4) the plaintiff was a member of the class of persons the statute or regulation was intended to protect.

*United States v. Sierra Pac. Indus.*, 879 F. Supp. 2d 1096, 1103–04 (E.D. Cal. 2012) (quoting *Alejo v. City of Alhambra*, 75 Cal. App. 4th 1180, 1184–85 (1999) (citing Cal. Evid. Code § 669)). *See also*, *Jordan v. Bank of Am., N.A.*, 396 F. Supp. 3d 922, 930 (E.D. Cal. 2019) (discussing a claim for negligence per se and observing, *inter alia*, "[t]he elements of a cause of action for negligence are (1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate cause between the breach and (4) the plaintiff's injury.") (quoting *Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333, 1339 (1998)); *Coury v. Caliber Home Loans, Inc.*, 2017

---

[7] This portion of the Motion specifically addresses "Counts IV and IX" of the Complaint. Motion at 12:18 (using the clerk-stamped page number, not that printed at the foot of the document). Count IV of the Complaint is a claim for negligence per se, but Count IX of the Complaint is for libel. It would appear this is a typographical error and Mr. Postle means Count XI (which is for negligence per se), but the Motion is replete with references to Count IX, suggesting otherwise. *See* Motion at 3:7, 3:17, 3:19, 4:5, 6:3, 6:6-7, 7:11, 12:1, 12:7, 12:18, 13:3. It is thus somewhat unclear what Mr. Postle intends here, though, as noted herein, such is ultimately immaterial as California permits claims for negligence per se.



WL 476411, at *3 (N.D. Cal. 2017) ("Thus, to establish negligence per se, a plaintiff must show that (1) defendant violated a statute, ordinance or regulation of a public entity, (2) the violation proximately caused his injury, (3) the injury resulted from an occurrence of the nature which the statute was designed to prevent; (4) he was one of the class of persons for whose protection the statute was adopted.") (citing *Sierra-Bay Fed. Land Bank Assn. v. Superior Court*, 227 Cal. App. 3d 318, 336 (1991)); *Beaver v. Tarsadia Hotels*, 29 F. Supp. 3d 1294, 1321 (S.D. Cal. 2014) (same).

Mr. Postle relies on an unpublished appellate decision noting (correctly) "In California, the violation of a statute creates a presumption of negligence, but does not give the plaintiff a negligence cause of action if the law does not otherwise impose a duty on the defendant." *Waldon v. Arizona Pub. Serv. Co.*, 642 Fed. Appx. 667, 669 (9th Cir. 2016) (citing Cal. Evid. Code § 669; *Ramirez v. Nelson*, 44 Cal. 4th 908 (2008); *Rice v. Ctr. Point, Inc.*, 154 Cal. App. 4th 949 (2007)). Mr. Postle's only other two topical citations are to *Ramirez* and *Rice*, the cases relied on by the *Waldon* Court.

Yet this argument falls short inasmuch as it is unaccompanied by any contention the statutes Mr. Postle is accused of violating are not ones that serve to impose a duty upon him. Here, Mr. Postle is accused of violating the federal statute governing wire fraud (Complaint at 43:10-11), as well as the California statute governing cheating in gambling establishments (Complaint at 52:8).

Mr. Postle does not argue he lacks a duty to comply with federal and state criminal laws, nor does his Motion endeavor to flush out this line of argument at all, instead simply positing, *ipso facto*, that negligence per se is not a cause of action in California. It is thus difficult to decipher what he is actually arguing here, other than to surmise – liberally and affording him a



greater argument than he actually posits – the Motion suggests Mr. Postle to not be bound to adhere to governing criminal laws.

Case law, however, belies any such contention. For more than 125 years, California has clearly recognized a claim for negligence per se stemming from a violation of penal laws intended to protect a plaintiff and govern a defendant. *See, e.g., Figone v. Guisti*, 43 Cal. App. 606, 608 (Cal. Ct. App. 1919) ("It has been held by the Supreme Court of this state that where a defendant violates the express provisions of a statute, that violation itself, when proven, establishes his negligence per se.") (citing *Williams v. S. P. Co.*, 173 Cal. 525, 540 (1916); *Siemers v. Eisen*, 54 Cal. 418 (1880); *McKune v. Santa Clara V. M. &. L. Co.*, 110 Cal. 480, 485 (1895); *Stein v. United R. R.*, 159 Cal. 368, 372 (1911); *Driscoll v. Cable Ry. Co.*, 97 Cal. 553, 565 (1893); *Bresee v. Los Angeles Traction Co.*, 149 Cal. 131, 139 (1906); *Fenn v. Clark*, 11 Cal. App. 79, 81 (1909). *See also*, *Hernandez v. County of Marin*, 2012 WL 1207231, at *4 (N.D. Cal. 2012) ("Section 669 creates a presumption of negligence arising from violation of a statute, but only if '[t]he person suffering the ... injury ... was one of the class of persons for whose protection the statute ... was adopted.' ") (quoting *Randi W. v. Muroc Joint Unified Sch. Dist.*, 14 Cal. 4th 1066, 1087 (1997) (quoting Cal. Evid. Code § 669)).

In *Walden* – the case relied upon by Mr. Postle – the court held a utility company does not owe a duty to an individual who is not one of its customers. *See Walden*, 642 Fed. Appx. at 669 ("'In the absence of a contract between the utility and the consumer expressly providing for the furnishing of a service for a specific purpose, a public utility owes no duty to a person injured as a result of an interruption of service or a failure to provide service.' Plaintiffs were not customers of APS and had no contractual claim to damages. The district court thus correctly



held that plaintiffs failed to state a claim under California law.") (quoting *White v. S. Cal. Edison Co.*, 25 Cal. App. 4th 442 (1994)).

Here Mr. Postle is not a utility company with a select base of individuals with whom he shares contractual privity, and he is not being sued under a statute that governs public utilities in their dealings with customers. Rather, he is a poker player, who was subject to the criminal laws of the State of California (and the United States of America) at all times relevant when dealing with the Plaintiffs herein, the victims of his criminal conduct. And inasmuch as California expressly recognizes a claim for negligence per se where an individual runs afoul of a statutory scheme, to the detriment of someone whose interests the legislature sought to protect in establishing that statutory scheme, both of the Plaintiffs' claims for negligence per se *sub judice* are appropriately stated and present valid causes of action.

## VII.     Argument: Unjust Enrichment is a Recognized Cause of Action in California

In a manner similar to – and as fleeting as – the Motion's effort to dispose with the Plaintiffs' claims for negligence per se, Mr. Postle next argues unjust enrichment to not be a cognizable claim under California law. In so doing, however, he elevates form above substance, citing to a holding noting that California permits claims for civil restitution, and looking past the sizeable case law permitting claims for unjust enrichment (which go so far as to enumerate the requisite elements thereof).

Axiomatically, unjust enrichment is a valid claim in California: "The elements for a claim of unjust enrichment are 'receipt of a benefit and unjust retention of the benefit at the expense of another.'" *Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal. App. 4th 1105, 1132 (2014) (quoting *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000)). *See also*, *Pedersen v. Greenpoint Mortg. Funding, Inc.*, 900 F. Supp. 2d 1071, 1081 (E.D. Cal. 2012)



("Moreover, the elements of an unjust enrichment claim are ''receipt of a benefit and [the] unjust retention of the benefit at the expense of another.''") (quoting *Peterson v. Cellco Partnership*, 164 Cal. App. 4th 1583, 1593 (2008) (quoting *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000))); *In re Intelligent Direct Mktg.*, 518 B.R. 579, 590 (E.D. Cal. 2014) ("Under California law, the elements of unjust enrichment are: (1) the receipt of a benefit; and (2) the unjust retention of the benefit at the expense of another.") (quoting *In re GSM Wireless, Inc.*, 2013 WL 4017123, at *45 (Bankr. C.D. Cal. 2013)).

However, as the *Prakashpalan* Court continues, while unjust enrichment requires a civil plaintiff be made whole, it is a claim that overlaps with California's cognizance of a claim for restitution:

> "The theory of unjust enrichment requires one who acquires a benefit which may not justly be retained, to return either the thing or its equivalent to the aggrieved party so as not to be unjustly enriched." It is not, strictly speaking, a theory of recovery, "'but an effect: the result of a failure to make restitution under circumstances where it is equitable to do so.'... It is synonymous with restitution.'"

*Prakashpalan*, 223 Cal. App. 4th at 1132 (quoting *Otworth v. Southern Pac. Transportation Co.*, 166 Cal. App. 3d 452, 460 (1985); citing *Melchior v. New Line Productions, Inc.*, 106 Cal. App. 4th 779, 793 (2003)).

Mr. Postle relies on *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 752 (9th Cir. 2015) for his argument that the Plaintiffs' claim for unjust enrichment ought to be dismissed. Yet this is peculiar, inasmuch as the *Astiana* Court permitted the claim of the plaintiff therein, for unjust enrichment, to proceed. *See, e.g.,*, *Astiana*, 783 F.3d. at 762 ("To the extent the district court concluded that the cause of action was nonsensical because it was duplicative of or superfluous to Astiana's other claims, this is not grounds for dismissal.").



Mr. Postle's only other topical citation is to *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350 (2010), which is one of the cases relied upon by the *Astiana* Court. Yet even in *Durell*, the subject claim for unjust enrichment was disposed of solely because the parties were in direct and express contractual privity; not because a claim for unjust enrichment lacks viability unto itself. *See, e.g.*, *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010) ("An unjust enrichment theory is inapplicable because Durell alleges the parties entered into express contracts.").

Since Mr. Postle does not extrapolate upon his argument concerning the Plaintiffs' claim for unjust enrichment, it is difficult to comprehend why exactly he believes this count should be dismissed, or why he believes the cases he cites stand for such a proposition. However, his lone pertinent contention – that California does not allow claims for unjust enrichment – is plainly belied by governing case law (including a case that he cites), and the Motion accordingly merits denial.

## VIII.   Argument: Mr. Postle's Incorporation of the Other Defendants' Arguments is Unavailing

Mr. Postle incorporates by reference the arguments of his co-defendants herein, who are (i) a casino; and (ii) a member of a casino's management team. Motion at 13:7-21. In so doing, Mr. Postle argues a claim for negligence is subject to the rigors of Federal Rule of Civil Procedure 9(b) (Motion at 13:19-21) which, as discussed above, is simply an objective misstatement of controlling law. However, more importantly, Mr. Postle also looks past one critical reality of his co-defendants' motions and their respective authorities: none stand for the proposition a fraudster may escape liability for his own actions.



To be sure, and as will be discussed under separate cover in briefs in opposition to the other motions to dismiss, the Plaintiffs maintain the arguments of King's Casino Management Corp. and Justin Kuraitis to be unavailing for numerous reasons. But even if one were to credit those papers in their entirety, those motions do not seek to insulate a fraudulent actor from being made to turnover the spoils of his own lawless conduct – they merely argue a casino and its management ought not be held liable for the illicit conduct of a patron.

None of the cases cited by either of Mr. Postle's co-defendants suggest a regime where a poker player may swindle others and enjoy civil immunity. There is a good faith argument being advocated by King's Casino Management Corp., which the Plaintiffs look forward to rebutting, concerning the scope of case law giving cover to casinos; there is no good faith argument, however, concerning any case law purporting to confer a free pass upon a huckster. Mr. Postle does not so much as endeavor to rationalize this position in any detail in his Motion, nor does he address the radical and violent equitable connotations of his position; he just argues, *ipso facto*, he ought not be civilly liable because his casino co-defendant has made an argument as to why it should not suffer the imposition of a judgment herein.

On this point, though, there is an inherent irony, as perhaps the most instructive authority is the very evidentiary code provision on which Mr. Postle relies in endeavoring to derail the claims against him for negligence per se. If Section 669 of the California Evidence Code recognizes a civil cause of action for violation of the state's statutory scheme, and Section 337x of the California Penal Code makes it illegal to cheat in any gambling establishment, California law has thus created a very tidy construct which makes clear a poker player may be sued for cheating others in a gambling establishment.



### IX.    Argument: As Argued in the Plaintiffs' Motion for Sanctions (DE #54), the Motion Should be Disregarded

Finally, as noted in their motion for sanctions (DE #54) being filed of even date herewith, Mr. Postle's Motion runs afoul of the rules governing the ghostwriting of filings, by attorneys, for *pro se* litigants. The Plaintiffs have endeavored to seek the mildest sanction possible so as to correct this issue in a non-punitive way – they do not seek the payment of attorneys' fees, they do not seek a default, and they do not seek any adverse evidentiary findings; they merely ask Mr. Postle's Motion be stricken on account of its disregard for Federal Rule of Civil Procedure 11, and that Mr. Postle either have his counsel notice an appearance or Mr. Postle hereafter proceed genuinely *pro se*. *See* Motion for Sanctions, DE #54, *passim*.

There are oddities throughout Mr. Postle's Motion seeking dismissal – he argues Federal Rule of Civil Procedure 9(b) to govern a claim for simple negligence as well as claims for negligence per se; he does not acknowledge the conflicting authority on the pleading standards for claims for negligent misrepresentation; he bases much of his argument on the Complaint containing "spurious" facts even though such is immaterial to a motion under Federal Rule of Civil Procedure 12(b)(6); and he at times swings broadly at the sufficiency of claims without identifying any purported elemental shortcoming in such claims. These are each unusual positions, yet it is still clear the paper has been authored by a lawyer (albeit perhaps one not accustomed to civil litigation). And the oddity of these positions, both individually and collectively, only serves to bolsters the problem highlighted in the Motion for Sanctions – Mr. Postle is at once professing to be *pro se* (in which case these issues would be amply understandable) and enjoying the benefit of a ghostwriting counsel (who, candidly, ought to

know better than endeavoring to subject a negligence claim to Federal Rule of Civil Procedure 9).

Ironically, Mr. Postle was served the Motion for Sanctions before he filed the Motion to which this brief is addressed. Unfortunately, both he and his ghostwriter seemed to not care. Thus, as urged in the Motion for Sanctions, it is ultimately appropriate to strike out Mr. Postle's Motion as a remedy to this misconduct.

## X.      Conclusion

WHEREFORE, the Plaintiffs respectfully pray this Honorable Court (i) deny the Motion; (ii) alternatively, afford leave to amend if additional allegations are necessitated; and (iii) afford such other and further relief as may be just and proper.

Dated this 28th day of April, 2020.

Respectfully Submitted,

**THE VERSTANDIG LAW FIRM, LLC**

By: /s/ Maurice B. VerStandig
Maurice B. VerStandig (*pro hac vice*)
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Telephone: (301) 444-4600
Facsimile: (301) 576-6885
mac@mbvesq.com
*Counsel for the Plaintiffs*

**[CERTIFICATE OF SERVICE ON FOLLOWING PAGE]**



OPPOSITION TO DEFENDANT MICHAEL POSTLE'S RENEWED
MOTION TO DISMISS PLAINTIFFS' COMPLAINT - 30



## **CERTIFICATE OF SERVICE**

I further certify that on this 28th day of April, 2020, I caused a true and correct copy of

the foregoing to be served upon the following persons via this Honorable Court's CM/ECF

system:

Michael L. Lipman, Esq.
Karen Lehmann Alexander, Esq.
Duane Morris LLP
750 B Street
Suite 2900
San Diego, CA 92101
*Counsel for King's Casino, LLC*

Heather U. Guerena, Esq.
Heather U. Guerena, Attorney at Law
7727 Herschel Avenue
La Jolla, CA 92037
*Counsel for King's Casino, LLC*

Mark Mao, Esq.
Boies Schiller Flexner LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
*Counsel for King's Casino, LLC*

Richard Pachter, Esq.
Law Offices of Richard Pachter
555 University Avenue, Suite 200
Sacramento, CA 95825
*Counsel for Justin Kuraitis*

I further certify that on this 28th day of April, 2020, I have caused a true and accurate

copy of the foregoing to be served on the following person via United States Mail, postage

prepaid:

Michael L. Postle
3724 Deerwalk Way
Antelope, California 95843



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

/s/ Maurice B. VerStandig
Maurice B. VerStandig

