1  Mark Mao (SBN 236165)
   BOIES SCHILLER FLEXNER LLP
2  44 Montgomery Street, 41st Floor
   San Francisco, CA 94104
3  Telephone:   (415) 293-6800
   Facsimile:   (415) 293-6899
4  mmao@bsfllp.com

5  Michael Lipman (SBN 66605)
   Karen L. Alexander (SBN 265926)
6  DUANE MORRIS LLP
   750 B Street, Suite 2900
7  San Diego, CA 92101-4681
   Telephone:   (619) 744-2200
8  Facsimile:   (619) 744-2201
   mllipman@duanemorris.com
9  klalexander@duanemorris.com

10 Heather U. Guerena (SBN 238122)
   7727 Herschel Avenue
11 La Jolla, CA 92037
   Telephone:   (858) 866-1020
12 Facsimile:   (858) 551-4388
   huguerena@elevationca.com

13

14 *Attorneys for Defendant*
   *King's Casino Management Corp,*
15 *successor by merger with*
   *King's Casino, LLC*

16

17              UNITED STATES DISTRICT COURT

18             EASTERN DISTRICT OF CALIFORNIA

19

20 VERONICA BRILL; KASEY LYN MILLS;      Case No. 2:19-cv-02027-WBS-AC
   MARC GOONE; NAVROOP SHERGILL;
21 JASON SCOTT; AZAAN NAGRA; ELI        **DEFENDANT KING'S CASINO**
   JAMES; PHUONG PHAN; JEFFREY          **MANAGEMENT CORP.'S REPLY IN**
22 SLUZINSKI; HARLAN KARNOFSKY;         **SUPPORT OF MOTION TO DISMISS**
   NATHAN PELKEY; MATTHEW ALLEN         **PLAINTIFFS' FIRST AMENDED**
23 HOLTZCLAW; JON TUROVITZ; ROBERT      **COMPLAINT**
   YOUNG; BLAKE ALEXANDER KRAFT;
24 JAMAN YONN BURTON; MICHAEL           Date:   May 18, 2020
   ROJAS; HAWNLAY SWEN; THOMAS          Time:   1:30 p.m.
25 MORRIS III; PAUL LOPEZ; ROLANDO      Dept.:  Courtroom 5
   CAO; BENJAMIN JACKSON; HUNG          Judge:  Hon. William B. Shubb
26 SAM; COREY CASPERS; ADAM DUONG;
   DUSTIN MCCARTHY; CHOU VINCE          Complaint Filed:  October 8, 2019
27 XIONG; BRIAN OLSON; CAMERON
   SMITH; JORDAN DIAMOND; ARONN

28

SOLIS; ALISHA DANIELS-
DUCKWORTH; CHRISTIAN SOTO
VASQUEZ; ANDREW HERNANDEZ;
DARRELL STEED; ARISH S. NAT; KYLE
KITAGAWA; BRIAN MICHAEL RAASCH;
ZEEV MALKIN; DAVID CRITTENTON;
PATRICK LAFFEY; PARAS SINGH;
FIRAS BOURI; IDRIS M. YONISI;
JOSHUA WHITESELL; DAVID DUARTE;
HARUN UNAI BEGIC; BRAD KRAFT;
TAYLOR CARROLL; ELIAS
ABOUFARES; TYLER DENSEN;
ANDREW LOK; JAKE ROSENSTIEL;
ANTHONY AJLOUNY; HECTOR
MARTIN; DALE MENGHE; SCOTT
SCHLEIN; AUGUSTE SHASTRY;
NICHOLAS COLVIN; JASON
MARKWITH; BRIAN WATSON; SHANE
GONZALES; KATHERINE STAHL; MIKE
NELSON; BRANDON STEADMAN;
BRYANT MILLER; HONG MOON;
MATTHEW GOUGE; NICHOLAUS
WOODERSON; CARLOS WELCH; ARIEL
REID; DAN MAYER; ANTHONY
GIGLINI; RYAN JACONETTI; ARIEL
CRIS MANIPULA; TRENTON SIDENER;
JAMES JOHN O'CONNOR; PATRICK
VANG; MARCUS DAVIS; ADAM COHEN;
DERICK COLE; AARON MCCORMACK;
BRENNEN ALEXANDER COOK;
MICHAEL PHONESAVANH RASPHONE;
BENJAMIN TENG; SCOTT SORENSON;
ANTHONY HUGENBERG; BILLY JOE
MESSIMER,

    *Plaintiffs,*

  v.

MICHAEL L. POSTLE; KING'S CASINO,
LLC D/B/A STONES GAMBLING HALL;
JUSTIN F. KURAITIS; JOHN DOES 1-10;
JANE DOES 1-10,

    *Defendants.*

**TABLE OF CONTENTS**

I.      INTRODUCTION ...........................................................................................1

II.     ARGUMENT ................................................................................................1

        A.      California Law Bars Plaintiffs' Claims for Gambling Related
                Losses...............................................................................................1

                1.      Plaintiffs' Claims Fail Because All Their Asserted
                        Gambling Damages Are Speculative and Therefore
                        Unrecoverable. ....................................................................1

                2.      California Public Policy Bars These Claims..............................4

        B.      The Negligence Claim Fails Because Plaintiffs Still Have Not
                Shown a Duty That Stones Owed Them as Gamblers.........................8

                1.      Plaintiffs Fail to Allege Duty and Causation Generally. ..........8

                2.      The Economic Loss Rule Also Bars Plaintiffs' Claims............8

                3.      Stones Does Not Have the Statutory Duties That Plaintiffs
                        Seek to Impose. ..................................................................11

        C.      Plaintiffs' Fraud-Based Claims All Fail. ..........................................13

                1.      Plaintiffs Brill and Mills Fail to Allege Fraud With
                        Particularity. ......................................................................13

                2.      Plaintiffs' Constructive Fraud Claim Fails to Adequately
                        Allege a Confidential Relationship......................................14

                3.      Plaintiffs' Negligent Misrepresentation Claim Fails to
                        Adequately Allege Any Actionable Misrepresentation. ..........16

        D.      Plaintiffs Fail to Allege A Cognizable CLRA Claim. ........................17

                1.      Plaintiffs Fail to Allege Conduct Falling Within the CLRA
                        Definitions...........................................................................17

                2.      Plaintiffs Provided Fatally Defective Notice. .......................18

        E.      Ms. Brill's Claim Asserting Libel Per Se Fails.................................19

        F.      The FAC Should be Dismissed with Prejudice....................................20

III.    CONCLUSION.............................................................................................21

# TABLE OF AUTHORITIES

**Cases**

*Aceves v. Allstate Ins. Co.*
  68 F.3d 1160 (9th Cir. 1995) .......................................................................... 7

*Adelman v. Associated Int'l Ins. Co.*
  90 Cal. App. 4th 352 (2001) ........................................................................... 9

*Agape Family Worship Ctr., Inc. v. Gridiron*
  2016 WL 633864 (C.D. Cal. Feb. 16, 2016)................................................... 10

*Alves v. Players Edge, Inc.*
  2007 WL 6004919 (S.D. Cal. Aug. 8, 2007) .................................................... 5

*Art of Living Found. v. Does*
  2011 WL 2441898 (N.D. Cal. June 15, 2011) ................................................ 20

*Balsam v. Trancos, Inc.*
  203 Cal. App. 4th 1083 (2012) ...................................................................... 18

*Bily v. Arthur Young & Co.*
  3 Cal. 4th 370 (1992), *as modified* (Nov. 12, 1992) ................................. 9, 10, 11

*Burns v. Neiman Marcus Grp., Inc.*
  173 Cal. App. 4th 479 (2009) ........................................................................ 11

*Cattie v. Wal-Mart Stores, Inc.*
  504 F. Supp. 2d 939 (S.D. Cal. 2007)............................................................ 19

*City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*
  43 Cal. 4th 375 (2008) .................................................................................. 15

*Corral v. Nationstar Mortg., LLC*
  2020 WL 802966 (E.D. Cal. Feb. 18, 2020).................................................. 18

*Crockford's Club Ltd. v. Si-Ahmed*
  203 Cal. App. 3d 1402 (1988) ......................................................................... 5

*Davidson v. Kimberly-Clark Corp.*
  889 F.3d 956 (9th Cir. 2018) ......................................................................... 14

*Delgado v. Trax Bar & Grill*
  36 Cal. 4th 224 (2005) .................................................................................. 12

*Friedman v. Old Republic Home Prot. Co., Inc.*
  2013 WL 12371869 (C.D. Cal. Sept. 9, 2013) ............................................... 18

*Hang Ngoc Lam v. Hawaiian Gardens Casino*
2020 WL 806655 (C.D. Cal. Jan. 8, 2020) ..............................................5

*Hanson v. Neuschmid*
2019 WL 1493193 (E.D. Cal. Apr. 4, 2019)..........................................17

*Hynix Semiconductor Inc. v. Rambus, Inc.*
527 F. Supp. 2d 1084 (N.D. Cal 2007) ................................................4

*In re Camarillo*
2005 WL 2203163 (Bankr. N.D. Cal. May 10, 2005) ............................4

*In re Pacquiao-Mayweather Boxing Match Pay-Per-View Litig.*
942 F.3d 1160 (9th Cir. 2019) ........................................................6, 7

*J'Aire Corp. v. Gregory*
24 Cal. 3d 799 (1979) ..............................................................10, 11

*Jamgotchian v. Sci. Games Corp.*
371 F. App'x 812 (9th Cir. 2010) ................................................5, 6, 7

*Keech v. Berkeley Unified Sch. Dist.*
162 Cal. App. 3d 464 (1984) ..........................................................11

*Kelly v. First Astri Corp.*
72 Cal. App. 4th 462 (1999) ....................................................4, 5, 6, 7

*Kephart v. City of Bakersfield*
2005 WL 1704463 (E.D. Cal. July 16, 2005) ....................................17

*Kyne v. Kyne*
16 Cal. 2d 436 (1940) ....................................................................5

*Laster v. T-Mobile USA, Inc.*
407 F. Supp. 2d 1181 (S.D. Cal. 2005) *aff'd*, 252 F. App'x 777 (9th Cir.
2007) ..........................................................................................18

*Metro. Creditors Serv. v. Sadri*
15 Cal. App. 4th 1821 (1993) ..........................................................5

*Monteforte v. Bank of New York Mellon Tr. Co. NA*
2017 WL 3913869 (E.D. Cal. Sept. 7, 2017)......................................20

*Nevcal Enters., Inc. v. Cal-Neva Lodge, Inc.*
194 Cal. App. 2d 177 (1961) ..........................................................5

*Outboard Marine Corp. v. Super. Ct.*
52 Cal. App. 3d 30 (1975) ..............................................................19

*Palm Springs Tennis Club v. Rangel*
  73 Cal. App. 4th 1 (1999) ..................................................20

*Persson v. Smart Inventions, Inc.*
  125 Cal. App. 4th 1141 (2005) ...........................................15

*Quelimane Co. v. Stewart Title Guar. Co.*
  19 Cal. 4th 26 (1998) ...........................................9, 10, 11

*Roach v. Lee*
  369 F. Supp. 2d 1194 (C.D. Cal. 2005) ..................................7

*Robinson Helicopter Co. v. Dana Corp.*
  34 Cal. 4th 979 (2004) ......................................................10

*Robinson v. HSBC Bank USA*
  732 F. Supp. 2d 976 (N.D. Cal. 2010) .................................18

*Rodriguez v. Topps Co.*
  104 F. Supp. 2d 1224 (S.D. Cal. 2000), *aff'd sub nom. Chaset v.*
  *Fleer/Skybox Int'l, LP*, 300 F.3d 1083 (9th Cir. 2002)........................6

*Rojas-Lozano v. Google, Inc.*
  159 F. Supp. 3d 1101 (N.D. Cal. 2016) ...............................18

*Rose v. J.P. Morgan Chase, N.A.*
  2012 WL 1574821 (E.D. Cal. May 3, 2012) .........................16

*Royal Neckwear Co. v. Century City, Inc.*
  205 Cal. App. 3d 1146 (1988) ...........................................12

*Sanchez v. Wal-Mart Stores, Inc.*
  2007 WL 1345706 (E.D. Cal. May 8, 2007) .........................19

*Schauer v. Mandarin Gems of Cal., Inc.*
  125 Cal. App. 4th 949 (2005) ...........................................15

*S. Cal. Gas Leak Cases*
  7 Cal. 5th 391 (2019) .....................................................9, 10

*State Ready Mix, Inc. v. Moffatt & Nichol*
  232 Cal. App. 4th 1227 (2015) ............................................9

*Strickland v. Bicycle Casino, Inc.*
  2012 WL 3756980 (Cal. Ct. App. Aug. 30, 2012)....................4, 5

*Todd v. Lovecruft*
  2020 WL 60199 (N.D. Cal. Jan. 6, 2020) ............................19

*Tyson v. W. Residential, Inc.*
    2016 WL 3679501 (Cal. Ct. App. July 5, 2016)............................12

*UMG Recordings, Inc. v. Global Eagle Entm't, Inc.*
    2015 WL 12746208 (C.D. Cal. Oct. 30, 2015)............................10

*United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*
    660 F. Supp. 2d 1163 (C.D. Cal. 2009) ............................10

*Vess v. Ciba-Geigy Corp. USA*
    317 F.3d 1097 (9th Cir. 2003) ............................16

*Von Grade v. Sprint PCS*
    312 F. Supp. 2d 1285 (S.D. Cal. 2003) ............................18

*Vu v. Cal. Commerce Club, Inc.*
    58 Cal. App. 4th 229 (1997) ............................2, 3, 4

*Wages v. Internal Revenue Serv.*
    915 F.2d 1230 (9th Cir.1990) ............................20

*Williams v. Salvation Army*
    2014 WL 6879936 (C.D. Cal. Dec. 4, 2014) ............................20

*Wilson v. Zorb*
    15 Cal. App. 2d 526 (1936............................15

*Youst v. Longo*
    43 Cal. 3d 64 (1987) ............................2, 3, 4

*Yow v. Nat'l Enquirer, Inc.*
    550 F. Supp. 2d 1179 (E.D. Cal. 2008)............................19

**Statutes**

Cal. Civ. Code § 1752............................19

Cal. Civ. Code § 1782............................19

Cal. Penal Code § 337x............................12

Cal. Code Regs. tit. 4, § 12380(a)(3)(A)............................11

Cal. Code Regs. tit. 4, § 12380(b)............................12

Cal. Code Regs. tit. 4, § 12395(a)(3)(A)............................12

**Rules**

Fed. R. Civ. P. 8 ............................1

Fed. R. Civ. P. 9(b) ............................................................................................................passim

## I.      INTRODUCTION

Despite filing a 56-page Opposition, Plaintiffs fail to articulate facts or law to support their claims.  Their dissertation tacitly acknowledges the incurable deficiencies of their pleadings.

Plaintiffs still have not addressed the three major issues Defendant King's Casino Management Corp., successor by merger with King's Casino, LLC, dba The Saloon at Stones Gambling Hall ("Stones") raised in its moving papers.  *First*, Plaintiffs have not provided any authority as to how gambling-related losses are cognizable as damages under California law, nor any California case or statute recognizing a general duty of care to gamblers by casinos or gambling establishments.  California courts consistently apply the economic loss rule to bar recovery of purely economic damages for negligence absent a special relationship between the plaintiff and defendant.  As Stones demonstrated in its moving papers, Plaintiffs only allege that at most three of them—but not the other Plaintiffs—had some additional conversations with a Stones employee.

*Second*, Plaintiffs cannot fix their fraud claims through the Opposition and must instead satisfy the specificity requirements of Federal Rules of Civil Procedure Rule ("Rule") 8 and 9(b) through the FAC itself.  The Opposition did not identify facts to cure the defects in the FAC.

*Lastly*, innuendos and insinuations do not substitute for facts or law.  Instead of countering Stones' citations and arguments, Plaintiffs rely on factual tangents and mere argument, which only prove why the FAC must be dismissed.  Rambling discussions, detached from what was pled and actual precedent, will not fix the fatal deficiencies of the FAC.  Stones respectfully requests the Court dismiss Counts III, VI, VII, VIII, IX, and X with prejudice.

## II.     ARGUMENT

### A.      California Law Bars Plaintiffs' Claims for Gambling Related Losses.

As explained in Stones' Motion to Dismiss, ECF No. 45, California law forecloses Plaintiffs' claims for gambling-related losses on two independent grounds: (1) lack of proximate causation; and (2) public policy related to the regulated nature of gambling.  This law forecloses all of Plaintiffs' claims except for Ms. Brill's libel claim, including their requests for punitive damages and to recover the collection rate.

**1.**      **Plaintiffs' Claims Fail Because All Their Asserted Gambling Damages Are Speculative and Therefore Unrecoverable.**

Plaintiffs' attempts to distinguish their gambling claims from those that California courts have held are not cognizable as a matter of proximate cause all fall short.  Plaintiffs' claims are just as speculative—if not more speculative—than the claims rejected in the cases cited in Stones' Motion, many of which Plaintiffs do not address in their Opposition.

Plaintiffs first attempt to distinguish the central case on this issue, *Vu v. California Commerce Club, Inc.*, 58 Cal. App. 4th 229 (1997), on the ground that averaging allows them to take the speculative odds of winning any particular hand of poker and approximate the amount they lost to cheating over time.  Opposition ("Opp.") at 19.  They offer no support for the proposition that this is a recognized approach to gambling damages.  And of course they could not, because such a judicial policy would lead to an unprecedented litany of meritless litigation.

In fact, *Vu* specifically forecloses this abstract theory of approximation of damages, emphasizing to the contrary that a longer duration of alleged damages makes the proximate causation link more, not less, speculative.  *See Vu*, 58 Cal. App. 4th at 233 ("[W]inning or losing at card games is inherently the product of other factors, namely individual skill and fortune or luck.  It simply cannot be said with reasonable certainty that the intervention of cheating such as here alleged was the cause of a losing hand, and certainly not of two weeks' or two years' net losses (as alleged by [plaintiffs] Matloubi and Vu respectively).").  Nor do Plaintiffs meaningfully distinguish *Youst v. Longo*, 43 Cal. 3d 64 (1987), except to argue that it did not mention an entry fee for the horse race at issue.  But *Youst* recognizes that "interference with the *chance* of winning a contest . . . usually presents a situation too uncertain upon which to base tort liability."  *Id.* at 67.  The inferential evidence Plaintiffs apparently plan to provide regarding their damages, Opp. at 21-22, is insufficient because "[d]etermining the probable expectancy of winning a [] contest but for the defendant's interference seems impossible in most if not all cases."  *Youst*, 43 Cal. 3d at 75.  Poker, like the horse racing in *Youst*, involves "the application of various unique or unpredictable skills and techniques, together with instances of luck or chance occurring at different times during the event, any one of which factors can drastically change the event's outcome."  *Id.* at 75-76.

Plaintiffs cannot provide an accurate picture of their likelihood of winning because of the multitude of independent factors influencing how a hand of poker unfolds. They do not describe even a single hand in any detail, and the act of describing such a hand would make clear the impossibility of assessing proximate causation. *Vu* did not hold that a claim for poker losses could be justiciable, as Plaintiffs assert in passing, Opp. at 30, instead musing that such a situation "might be hypothesized" but would need to be equivalent to "a horse shot before it crosses the finish line, 10 lengths ahead of the field," and the plaintiffs had not alleged frustration of any such outcomes. *Vu*, 58 Cal. App. 4th at 234 n.5 (citation omitted). Such an extreme scenario is likewise not alleged here.

Plaintiffs attempt to overcome California's bar on gambling-related damages as a matter of proximate causation by way of their requests for recovery of the collection rate paid to Stones and punitive damages, but neither form of damages is available here. *Vu* was a lawsuit against a major cardroom that, like Stones, offered poker tables. It stands to reason that the plaintiffs sought to recover the collection rate paid to the cardroom, and the decision draws no distinction between money allegedly lost to other players and to the cardroom. *See id.*

Just as in *Vu*, Plaintiffs have identified no "specific, identifiable sums that the club took from them." *Vu*, 58 Cal. App. 4th at 235 (stating that as a requirement for conspiracy and conversion claim). To the contrary, as Stones explained in its Motion to Dismiss, Plaintiffs were not injured by the collection rate because they did not pay when they lost and were not injured by the collection rate when they won. *See* Request for Judicial Notice ("RJN") Ex. A; FAC ¶ 184.[1] Any sum paid by Plaintiffs, relating to their injury in this case, is purely speculative. Plaintiffs fail to respond at all to this reality in their Opposition.

Nor are punitive damages available. *Vu* and *Youst* make clear that California does not allow damages for gambling-related losses as a matter of proximate causation. As Plaintiffs recognize, punitive damages require a showing of actual damages, Opp. at 23 (quoting *Hynix Semiconductor*

---

[1] Plaintiffs have not opposed judicial notice of the documents attached to Stones' Request for Judicial Notice. For the reasons in that Request, the Court should take judicial notice of Exhibit A and treat as incorporated by reference Exhibit B and C.

*Inc. v. Rambus, Inc.*, 527 F. Supp. 2d 1084, 1102 (N.D. Cal. 2007)), and there are no provable

actual damages for gambling-related losses.  *Vu* and *Youst* did not suggest that nominal damages

were available, instead describing the plaintiffs' claims as entirely foreclosed.[2]

### 2.      California Public Policy Bars These Claims.

As Stones explained in its Motion, ECF No. 45 at 17-18, gambling in California is highly

regulated, and California public policy precludes private causes of action for gambling-related

damages on that ground.  Plaintiffs in their own Opposition cite several cases so holding.  Opp. at

24-29.  Rather than engaging with the cases that Stones cited, Plaintiffs attempt to trace a story with

respect to California public policy leading to gambling-related damages becoming cognizable as

certain types of gambling became legal.  In pressing that story, Plaintiffs make a series of analytical

errors:

*First*, Plaintiffs assume that California's public policy regarding non-recognition of

common law liability for gambling-related damages is solely about the historical illegality of

gambling and has been abrogated as some types of gambling have become legal.  Not so.  As recent

cases holding gambling-related damages are not cognizable have observed, the disallowance of

gambling-related damages stems from the highly regulated nature of gambling activities such that

California courts decline to recognize separate common law causes of action.  *See Strickland v.

Bicycle Casino, Inc.*, 2012 WL 3756980, at *3 (Cal. Ct. App. Aug. 30, 2012) (noting that "a

comprehensive scheme of regulation, overseen by the Attorney General's Bureau of Gambling

Control and the Gambling Commission, as well as municipalities, exists to regulate" casinos and

that "the Legislature chose *not* to create a right to sue over gambling losses" following *Kelly*).

Contrary to Plaintiffs' argument, this policy remains recognized in recent cases and does not turn on

the legality of some forms of gambling.  *See, e.g.*, *In re Camarillo*, 2005 WL 2203163, at *8

(Bankr. N.D. Cal. May 10, 2005) ("California has a strong and long-standing public policy against

judicial resolution of civil disputes arising out of lawful or unlawful gambling contracts or

transactions. This policy applies to bar actions to enforce gambling debts or to recover gambling

---

[2] Additionally, Plaintiffs still have not explained how those of them who did not lose money to Mr.
Postle could possibly recover, even on their own theory.  *See* FAC ¶ 190.

losses."); *Metro. Creditors Serv. v. Sadri*, 15 Cal. App. 4th 1821, 1832 (1993) ("California's strong public policy against enforcement of gambling debts remains unaffected by increased public tolerance of gambling itself or by the limited legalization of certain forms of gambling in this state."). Tellingly, Plaintiffs do not cite any case in arguing that California public policy now favors their claims. Opp. at 33-34. Plaintiffs' policy arguments have no basis in law or precedent.

*Second*, Plaintiffs do not address many of the cases cited by Stones, which similarly demonstrate the ongoing viability of California's public policy against awarding gambling-related damages, including rates or fees collected by a casino or cardroom. *See Alves v. Players Edge, Inc.*, 2007 WL 6004919, at *14 (S.D. Cal. Aug. 8, 2007) (rejecting recovery from "purchasing of tips" because they were "part of the 'gambling' transactions which Plaintiffs conducted with Defendants"); *Hang Ngoc Lam v. Hawaiian Gardens Casino*, 2020 WL 806655, at *2 (C.D. Cal. Jan. 8, 2020) (rejecting a claim against a casino because "California has a pervasive 'public policy against judicial resolution of civil claims arising out of gambling contracts or transactions absent a statutory right to bring such claims'" (citation omitted)); *Kyne v. Kyne*, 16 Cal. 2d 436 (1940) (denying recovery of gambling funds, including portion retained by gambling organizer); *Strickland*, 2012 WL 3756980, at *3 (affirming dismissal of allegations of being denied a set tournament payout from a casino).

*Third*, Plaintiffs' reliance on cases that predate the decision in *Kelly v. First Astri Corp.*, 72 Cal. App. 4th 462 (1999), is misplaced. As explained below, those cases do not relate to recovery from gambling transactions and do not overcome the holding in *Kelly* that damages from gambling transactions cannot be awarded. *Nevcal Enterprises, Inc. v. Cal-Neva Lodge, Inc.*, 194 Cal. App. 2d 177 (1961), does not support Plaintiffs' position because it was decided 38 years before *Kelly*, analyzed an accounting claim with respect to casino business rather than damages from gambling, and depended on principles of comity with Nevada (where the casino in question was located) entirely absent here. *See Jamgotchian v. Sci. Games Corp.*, 371 F. App'x 812, 813 (9th Cir. 2010) (rejecting a plaintiff's citation to *Nevcal* including because the decision predated *Kelly*). Similarly, *Crockford's Club Ltd. v. Si-Ahmed*, 203 Cal. App. 3d 1402, 1406 (1988), was decided 11 years before *Kelly*, analyzed a claim for passing bad checks rather than related to gambling losses, and

1   depended on principles of comity in enforcing an English judgment rather than the question of

2   liability or damages under California law.  Thus, it also cannot overcome the binding precedent on

3   which the Motion relies.

4       *Fourth*, Plaintiffs' reliance on *Rodriguez v. Topps Co.*, 104 F. Supp. 2d 1224 (S.D. Cal.

5   2000), *aff'd sub nom. Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083 (9th Cir. 2002), for the

6   proposition that courts will award gambling-related damages is equally misplaced.[3]  In the course of

7   dismissing the plaintiffs' RICO claim against a card manufacturer for lack of statutory standing,

8   *Rodriguez* observed that the "right to redress that Plaintiffs *may* enjoy under California state law to

9   sue individually for their gambling losses does not equate with the standing requirement of

10  [RICO]."  *Id.* at 1226 (emphasis added).  *Rodriguez* did not hold, one way or the other, whether the

11  plaintiffs would have a right to redress in state court, just that any state law remedy was irrelevant

12  to RICO standing.  And *Rodriguez* did not analyze any of the cases on gambling-related damages or

13  discuss state law further, as it was collateral to the issues in the case.  *See id.*

14      *Fifth*, Plaintiffs do not accurately distinguish *Kelly*, *Jamgotchian v. Scientific Games Corp.*,

15  or *In re Pacquiao-Mayweather Boxing Match Pay-Per-View Litigation*, 942 F.3d 1160, 1164

16  (9th Cir. 2019).  Plaintiffs attempt to distinguish *Kelly* on the ground that its analysis regarding

17  California's bar on gambling-related damages is mere "contemplative dicta."  Opp. at 30.

18  Plaintiffs' position ignores the express language in *Kelly* stating that the plaintiff's action was

19  "barred, absent a statutory right to recover his alleged gambling losses, under California's strong

20  and long-standing public policy against judicial resolution of civil claims arising out of lawful or

21  unlawful gambling contracts or transactions that applies both to actions for recovery of gambling

22  losses and actions to enforce gambling debts."  *Kelly*, 72 Cal. App. 4th at 466.  This is the first

23  holding of the case.  *See Jamgotchian*, 371 F. App'x at 813 (describing that proposition as the

24  holding of *Kelly*).[4]

25

26  [3] The Florida cases Plaintiffs cite shed no light on California law, particularly given that Plaintiffs
    cite no California case incorporating Florida law on gambling-related damages.  *Cf.* Opp. at 29 n.8.
27  [4] Even if the statement in *Kelly* were dicta, federal courts in the Ninth Circuit follow considered
    dicta from California courts.  *See, e.g.*, *Aceves v. Allstate Ins. Co.*, 68 F.3d 1160, 1164 (9th Cir.

28

1    Plaintiffs assert that the Ninth Circuit's decision in *Jamgotchian* is limited to the particular

2    kind of gambling at issue and that its holding does not apply to claims for the collections rate.

3    There is no legal support for the proposition that the Ninth Circuit's recognition of California's

4    public policy is so limited.  *Jamgotchian* described the rule broadly, without reference to any

5    particular type of gambling.  It held, that "'a suit to be placed in the *ex ante* position after losing a

6    bet is' [a suit to recover gambling losses], and is barred by *Kelly*."  *Jamgotchian*, 371 F. App'x at

7    813 (quoting *Kelly*, 72 Cal. App. 4th at 490).  Plaintiffs are seeking "to be placed in the *ex ante*

8    position after losing a bet."  *Id.*  Thus, Plaintiffs' claims are barred by *Kelly*.

9    Plaintiffs attempt to distinguish *In re Pacquiao-Mayweather* on the grounds that the case

10    "concerns claims of paying spectators – not participants" and "the rules of boxing were followed."

11    Opp. at 31.  But Plaintiffs identify nothing in *In re Pacquiao-Mayweather* that limits its core

12    holding that plaintiffs who get what they pay for do not have a cause of action, even when they are

13    otherwise disappointed.  *See In re Pacquiao-Mayweather*, 942 F.3d at 1169.  Importantly for this

14    case, the holding extends to those sponsoring or putting on the event in question—here games of

15    poker, there a boxing match.  And, also importantly, the holding extends to when there *are*

16    violations of the rules.  *In re Pacquiao-Mayweather* specifically observed that the injured boxer and

17    his personal trainer lied in a pre-fight medical questionnaire completed under penalty of perjury by

18    representing that the boxer had not suffered any injury or serious medical condition.  *Id.* at 1165.

19    Like the organizers and broadcaster in *In re Pacquiao-Mayweather*, Stones just provided a venue

20    and collected the same rate from the pot no matter who won.  RJN Ex. A; Opp. at 57.  Plaintiffs

21    decided whether they wanted to play, for how long, how much to bet, and in which hands to

22    participate.  *Id.*  Plaintiffs' claims for negligence, fraud, constructive fraud, negligent

23    misrepresentation, and violation of the Consumer Legal Remedies Act ("CLRA") all must be

24    dismissed based on lack of proximate causation and California public policy.

25

26

27    1995) ("The district court, like us, is bound to follow the considered dicta as well as the holdings of
the California Supreme Court when applying California law."); *Roach v. Lee*, 369 F. Supp. 2d

28    1194, 1199 (C.D. Cal. 2005) (following considered dicta from the California Court of Appeal).  If
the statement in *Kelly* is dicta, it is at least considered dicta.

### B. The Negligence Claim Fails Because Plaintiffs Still Have Not Shown a Duty That Stones Owed Them as Gamblers.

In the event they can overcome California law regarding proximate causation and public policy for gambling-related damages, Plaintiffs put forward several theories of a potential negligence duty of care, but ignore the key reality that Stones did not owe them a duty of care enforceable through a negligence claim to protect them from potential cheaters.  *See* Opp. at 40 (asserting Stones breached its duty to Plaintiffs "by not taking affirmative action to control the wrongful acts of Mr. Postle" (citation and internal quotation marks omitted)).  Plaintiffs have not identified any case finding the duties Plaintiffs posit by a casino, and Plaintiffs tacitly admit that Stones was not complicit in whatever they are alleging that Mr. Postle did.  Their arguments for this Court to be the first to impose such a duty by analogy fall short.

#### 1. Plaintiffs Fail to Allege Duty and Causation Generally.

Much is made in the FAC about how "numerous individuals" allegedly told co-defendant Justin Kuratis about their suspicions of cheating, as if this creates some special duty on Stones to the players.  But the first specific date alleged in the FAC on which someone reported Mr. Postle's alleged cheating was March 20, 2019.  FAC ¶ 155.  43 of the 68 games had already occurred by then, and Plaintiffs do not explain when each of them played during the 68 games.  FAC ¶ 205.  In fact, although Plaintiffs are in possession of the records demonstrating who played when, they refuse to get specific.  *See* FAC ¶ 206.

Where there is no California precedent for a general duty owed by gambling establishments to gamblers, Plaintiffs cannot generally plead such "special circumstances" while concurrently withholding details as to whether any of them were actually in such a circumstance.  Again, Plaintiffs do not get to bypass procedural fairness with vague allegations and mere innuendo.

#### 2. The Economic Loss Rule Also Bars Plaintiffs' Claims.

Plaintiffs make four arguments regarding why the economic loss rule does not apply in this circumstance: (1) the rule does not apply outside of a contractual relationship; (2) even if it applies outside of a contractual relationship, it does not apply when the parties do not engage in a commercial transaction or sale; (3) even if it applies when the parties have not engaged in a

1   commercial transaction or sale, it does not apply outside of lawsuits for prospective economic

2   advantage; and (4) even if it applies outside of claims for prospective economic advantage,

3   Plaintiffs were in a special relationship with Stones and Stones had a negligence duty of care to

4   Plaintiffs based in the common law or regulation.  Each theory is contradicted by the cases that

5   Stones cited in its Motion to Dismiss and that Plaintiffs do not address.

6        The economic loss rule applies beyond situations in which the parties are in a contractual

7   relationship or have engaged in a commercial transaction or sale, as demonstrated by *Southern*

8   *California Gas Leak Cases*, 7 Cal. 5th 391 (2019).  The California Supreme Court concluded in that

9   recent decision that the economic loss rule barred negligence claims related to a "massive, months-

10  long leak from a natural gas storage facility," which damaged the plaintiff business owners'

11  business.  *Id.* at 394.  Even though the local business owners were almost certainly not in a

12  contractual relationship with the natural gas storage facility, their claims for purely economic losses

13  were nonetheless foreclosed.  *Id.* at 398.  Similarly, *Bily v. Arthur Young & Co.*, 3 Cal. 4th 370

14  (1992), *as modified* (Nov. 12, 1992), barred negligence claims by a director of a company investing

15  in his individual capacity who "[i]n his individual capacity . . . had no contractual or similar

16  relationship" to the defendant auditor "and thus was not in privity with" the auditor.  *Id.* at 407 n.17.

17  Many California cases similarly enforce the economic loss rule without a contractual relationship.

18  *See, e.g.*, *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26 (1998) (rejecting negligence

19  claim based on decision *not to contract* with a third party, causing the plaintiffs' losses); *State*

20  *Ready Mix, Inc. v. Moffatt & Nichol*, 232 Cal. App. 4th 1227, 1232 (2015) ("[T]he economic loss

21  rule bars [the plaintiff's] cross-complaint because [the defendant] has no contractual relationship

22  with [the plaintiff] or [a company that contracted with the plaintiff] and no facts are alleged that the

23  concrete injured a person or damaged other property."); *Adelman v. Associated Int'l Ins. Co.*, 90

24  Cal. App. 4th 352, 368 (2001) (recognizing that if a duty were imposed the defendant's "exposure,

25  *for the same conduct*, would be greater to those parties with whom it did *not* contract than it would

26  be to the party with whom it did").  Each of these cases rejects Plaintiffs' position, yet Plaintiffs

27  address none of them in their Opposition.

28        Most of the cases Plaintiffs cite involved parties in contractual relationships that would

likely have satisfied the factors for a special relationship, with the courts recognizing that the economic loss rule acts in that circumstance to limit the plaintiff to pursuing contract damages.  *See United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163, 1181 (C.D. Cal. 2009); *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004).  The situation here is distinct, with Plaintiffs expressly disavowing allegations of a contract with Stones of the type that would tend to create obligations.  Opp. at 35.

Plaintiffs have identified two federal district court decisions purporting to limit the application of the economic loss rule to parties with a contractual or business relationship, but neither supports their position.  *Agape Family Worship Center, Inc. v. Gridiron*, 2016 WL 633864 (C.D. Cal. Feb. 16, 2016), does not cite California authority limiting the economic loss rule to disputes between parties in contractual relationships and, in any event, rejected the negligence claim on other grounds.  *UMG Recordings, Inc. v. Global Eagle Entertainment, Inc.*, 2015 WL 12746208, at *11 (C.D. Cal. Oct. 30, 2015), also does not identify California authority limiting the economic loss rule as Plaintiffs suggest.  To the extent *Agape* and *UMG Recordings* hold that the economic loss rule applies only when the parties have a contract or are engaged in a commercial transaction, they are irreconcilable with the California Supreme Court's decisions in *Southern California Gas Leak Cases*, *Bily*, *Quelimane*, and others, which are the binding authority setting out the test for applying the economic loss rule in California.[5]

Plaintiffs make only a conclusory attempt to explain how a special relationship exists between them and Stones, Opp. at 37-38, under the factors identified in *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 804 (1979).  Plaintiffs point to no factual allegations in the FAC to support their contentions regarding a special relationship with Stones.  They cite no cases.  And they do not address Stones' application of the factors described in *Bily* suggesting that no special relationship exists here or the parallels between their contentions and those of the plaintiffs in *Bily* and *Quelimane*.  Nothing about Stones' relationship with Plaintiffs was directed at Plaintiffs making money.  Stones did not benefit based on who won.  *See* RJN Ex. A.  And Stones is not alleged to

---

[5] Plaintiffs' out-of-state authorities are, again, unhelpful to Plaintiffs as they highlight the application of the economic loss rule where the issue is the balancing of tort and contract remedies.

1  have affected who won except to the extent that Plaintiffs allege Stones should have caught Mr.

2  Postle cheating and banned him from playing.  *Cf. Quelimane*, 19 Cal. 4th at 36 (recognizing the

3  lack of an economic stake with respect to the parties is a factor weighing against finding a special

4  duty).  The allegation of breach based on Stones allowing Plaintiffs to lose money without catching

5  Mr. Postle is not sufficient.  *See Burns v. Neiman Marcus Grp., Inc.*, 173 Cal. App. 4th 479, 490

6  (2009) (rejecting a special relationship between Neiman Marcus and a victim of embezzlement

7  through cashing of forged checks at the store).  Plaintiffs, as sophisticated poker players, could

8  control and adjust the relevant risks of cheating through private ordering.  *See Bily*, 3 Cal. 4th at

9  398.  The factors identified in *J'Aire* lead to a conclusion that no special relationship existed here.

10

11  ### 3.  Stones Does Not Have the Statutory Duties That Plaintiffs Seek to Impose.

12  Assuming, *arguendo*, a special relationship existed between Stones and Plaintiffs or the

13  economic loss doctrine were inapplicable, Plaintiffs have not shown that California law imposes the

14  duty on Stones that Plaintiffs rely on for their negligence claim.  Plaintiffs look to two sources for

15  their alleged duty, but neither is alleged in their FAC and they do not support such a duty.[6]

16  Plaintiffs first contend that California gaming regulations allegedly requiring Justin Kuraitis

17  to report Mr. Postle created a negligence duty.  The regulation Plaintiffs identify is from a section

18  of the Gambling Control Act entitled "Minimum Internal Control Standards (MICS) for Gambling

19  Establishments."  *See* Cal. Code Regs., tit. 4, § 12395(a)(3)(A).  The standard Plaintiffs cite is not

20  identified in the FAC.  In any event, the cited standard does not give rise to liability because

21  Plaintiffs were not "member[s] of the class for whose benefit the [regulation] was enacted," they

22  were not directly harmed by any violation, and their loss of money playing poker is not "of the

23  precise nature the [regulation] was specifically designed to prevent."  *Keech v. Berkeley Unified*

24  *Sch. Dist.*, 162 Cal. App. 3d 464, 469 (1984).  The MICS were not enacted for the benefit of

25  Plaintiffs but rather "to better ensure the maintenance of accurate records, the recording of all

26

27  [6] Plaintiffs disclaim any reliance for purposes of this motion on their (spurious) allegations that Mr.
   Postle was employed by Stones either for purposes of a *respondeat superior* theory or imputation of
28  knowledge.  Opp. at 40-41.  As Stones explained in its motion, an imputation of knowledge theory
   would fail anyways.  Mot. at 24.

1  income, the safeguarding of assets and records of the gambling establishment, operational

2  efficiency and integrity, and adherence to prescribed policies and procedures."  Cal. Code Regs., tit.

3  4, § 12380(b).  And the cited regulation targets clean, safe, and legal casino environments generally,

4  not Plaintiffs' alleged harm in particular.  *Id.* § 12395(a)(3)(A) (listing as grounds for reporting any

5  reasonably suspected violation of the Gambling Code, regulation, or statutes governing gambling,

6  as well as suspected loan-sharking, drug possession or distribution, money laundering, robbery,

7  assault with a deadly weapon, pimping, pandering, burglary, forgery, fraud, grand theft, petty theft,

8  embezzlement, extortion, commercial bribery, counterfeit currency, loiter for prostitution, pimping,

9  or prostitution).  Moreover, the injury to Plaintiffs from any violation of the cited reporting

10  requirement is attenuated given that the Bureau would have needed to investigate a report, make

11  findings Stones does not control, and then take actions Stones does not control to sanction Mr.

12  Postle.  As a result, the regulation cannot be used to create a duty on Stones as to Plaintiffs.

13          Plaintiffs next make an argument seemingly based in premises liability principles and Mr.

14  Postle's alleged violation of the California Penal Code.  Premises liability and the Penal Code

15  section are not identified in the FAC to support the negligence claim against Stones.  In any event,

16  this theory fails as well.  If Stones owed any such duty as a proprietor to Plaintiffs, that duty would

17  be to protect them from foreseeable physical assaults and violence—not from gambling losses.

18  California courts apply the doctrine of premises liability almost exclusively to cases involving

19  physical harm or violence and require that a proprietor take reasonable steps to protect its customers

20  against foreseeable third-party "criminal acts."  *Delgado v. Trax Bar & Grill*, 36 Cal. 4th 224, 229

21  (2005).  In the related context of commercial landlords and tenants, courts have refused to impose

22  on landlords a duty to protect a tenant's property from third-party theft or burglary.  *See Royal*

23  *Neckwear Co. v. Century City, Inc.*, 205 Cal. App. 3d 1146 (1988) (dismissing shopping-center

24  tenant's negligence claim against landlord to recover for merchandise lost in two burglaries because

25  landlord did not owe duty to safeguard tenant property); *Tyson v. W. Residential, Inc.*, 2016 WL

26  3679501, at *3 (Cal. Ct. App. July 5, 2016) ("*Royal Neckwear* establishes that a commercial

27  landlord does not owe its tenants a duty to safeguard the tenants' property from reasonably

28  foreseeable criminal activity by third parties.").  Penal Code section 337x does not assist Plaintiffs

1   as it states in its entirety, "It is unlawful to cheat at any gambling game in a gambling

2   establishment."  The statute makes no mention of others at the casino or the risk of injury to

3   specific individuals from cheating.[7]

4         Plaintiffs decided whether to play with Mr. Postle, including after some of them allege that

5   they suspected he was cheating.  Stones' role was to make a poker game available consistent with

6   the rules imposed by state regulators regarding the games it offers and how it can be paid.  It

7   complied with those rules, and Plaintiffs do not allege otherwise.  Their effort to append a

8   negligence duty to protect them from other poker players fails as a matter of law.

9         As a careful examination of Plaintiffs' arguments shows, Plaintiffs are asking that the Court

10  impose a new duty for casinos in California, after bypassing long-standing precedents on how

11  gambling losses are not compensable, disregarding the application of the economic loss rule, and

12  ignoring that even Plaintiffs have admitted that Stones did not participate in the alleged cheating.

13  The Court should deny Plaintiffs' request to impose such an unprecedented duty.

14               **C.**    **Plaintiffs' Fraud-Based Claims All Fail.**

15         Plaintiffs fail to allege key elements of their fraud, constructive fraud, and negligent

16  misrepresentation claims.  All but two Plaintiffs still have not provided any clarity as to who heard

17  what, when from Mr. Kuraitis.  *See* Opp. at 43-45.  Instead, Plaintiffs argue that Rule 9(b) does not

18  apply to their claims for negligent misrepresentation, or that the FAC satisfies Rule 9(b) regardless.

19  None of these arguments has merit.

20             **1.**    **Plaintiffs Brill and Mills Fail to Allege Fraud With Particularity.**

21         As Mr. Goone has abandoned his fraud claim, Opp. at 42 n.11, just two "Stones Fraud

22  Plaintiffs" remain.[8]  As Stones explained in its moving papers, less than a handful of the nearly 90

23  Plaintiffs provided any details or specificity as to the alleged fraud they suffered, and Ms. Brill and

24  Ms. Mills make no meaningful effort in the Opposition to address the deficiencies and

25

---

26  [7] To the extent Plaintiffs urged a negligence duty in the FAC based on nebulously alleged security
27  standards, they appear to have abandoned it in their Opposition.

28  [8] Stones notes that if Plaintiffs do not concede that there are only two Plaintiffs still maintaining
their fraud claims, Plaintiffs still fail to explain how each of the remaining 87 Plaintiffs suffered any
actionable fraud with specificity.

1   contradictions undermining their claims.  By failing to address their pleading failures as to what Mr.

2   Kuraitis purportedly told them about investigations and audits, Plaintiffs concede an argument fatal

3   to their fraud claims.  *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018),

4   *cert. denied*, 139 S. Ct. 640 (2018).  Similarly, Plaintiffs do not address that purported speculation

5   by Mr. Kuraitis to Ms. Brill about Mr. Postle's fearlessness, skill at poker, and strategy were non-

6   actionable opinions rather than actionable statements of fact.[9]  *See* Mot. at 23-24; Opp. at 43-44.

7         Ms. Brill and Ms. Mills similarly have not sufficiently pled Stones' knowledge or

8   recklessness underlying any fraudulent statement.  *See* Mot. at 24.  Plaintiffs do not engage with

9   Stones' arguments on this point, highlighting that they failed to link any allegedly fraudulent

10  representation to their vague assertion that "at least one agent" of Stones acted as a confederate of

11  Mr. Postle in some unknown capacity and circumstance.  *See* FAC ¶ 233.  Plaintiffs again fall back

12  on alleged comments by Mr. Kuraitis about Mr. Postle and a Martingale strategy, Opp. at 45-46, but

13  no nexus exists between Plaintiffs' account of whether a Martingale strategy is possible in poker

14  and any knowledge of cheating by Mr. Postle attributed to Stones.

15        The text message chain attached to Plaintiffs' Opposition proves that no fraud occurred.[10]

16  In his purported exchange with Ms. Mills, Mr. Kuraitis does not state that an "investigation of such

17  cheating allegations had occurred or would be occurring," reference the outcome of such an

18  investigation, or state that "Mr. Postle is not cheating."  *See* FAC ¶ 263; Opp. at 43-44.  The text

19  message chain demonstrates that Plaintiffs' allegations about communications from Mr. Kuraitis are

20  unsubstantiated and warrants scrutiny of their vague characterizations of other purported

21  communications from Mr. Kuraitis.

22
23        **2.**      **Plaintiffs' Constructive Fraud Claim Fails to Adequately Allege a Confidential Relationship.**

24        Plaintiffs' constructive fraud claim fails because they were not in a confidential relationship

25  with Stones and have not alleged their claim consistent with Rule 9(b)'s pleading requirements.

26
27  [9] Plaintiffs also do not explain how a purported statement about a Martingale strategy could have misled them given their insistence that a Martingale strategy is so obviously inapplicable to poker.

28  [10] Despite the only passing mention in the FAC, Stones does not oppose treating the text messages as incorporated by reference if the Court believes such an incorporation is appropriate.

Plaintiffs assert that the "markedly perverse collection of events" in this case gives rise to a confidential relationship between Stones and Plaintiffs, Opp. at 47, but California law recognizes no such theory of confidential relationships.

Plaintiffs have not and cannot allege a confidential relationship with Stones.  *See Schauer v. Mandarin Gems of Cal., Inc.*, 125 Cal. App. 4th 949, 960 (2005) (sustaining demurrer to constructive fraud claim for failure to plead requisite confidential relationship); *Wilson v. Zorb*, 15 Cal. App. 2d 526, 532 (1936) ("[E]stablishing a fiduciary duty" requires "something more than friendship or confidence in the professional skill and in the integrity and truthfulness of another").  Stones' collection rate does not create a fiduciary relationship with Plaintiffs.

The cases that Plaintiffs cite do not support finding a confidential relationship.  Opp. at 48-50.  First, *Persson* concluded the parties did not have a confidential relationship in a situation involving evidence of an express undertaking during buyout negotiations by one party to "'paint [the other party] the truest picture possible of where the company is right now.'"  *Persson v. Smart Inventions, Inc.*, 125 Cal. App. 4th 1141, 1161-62 (2005) (reversing judgment awarding damages for breach of fiduciary duty).  Second, *City of Hope National Medical Center v. Genentech, Inc.*, 43 Cal. 4th 375, 386 (2008), addressed the standard for a fiduciary or confidential relationship quoted in *Persson*, foreclosing such a relationship here.  *City of Hope* recognized that even many relationships characterized by trust, the grant of broad discretion, asymmetrical access to information, and one party's vulnerability do not give rise to a fiduciary or confidential relationship.  Plaintiffs' relationship to Stones is far more attenuated than the relationships in which *City of Hope* held there would be no fiduciary or confidential relationship.  *See id.* at 388.  Plaintiffs' allegations make clear they had the ability to protect themselves from any harm, emphasizing their lack of vulnerability.  They allege that they were among the first to identify potential cheating by Mr. Postle but decided to play anyways.  *Compare* FAC ¶ 159, *with* Opp. at 51.  The level of trust, discretion, asymmetrical information, and vulnerability were less for Plaintiffs than in the context of a car repair shop that *City of Hope* observed would not have the obligations accompanying a confidential relationship.  43 Cal. 4th at 388-89.  Additionally, Plaintiffs have identified no alleged facts supporting acceptance of a confidential relationship by Stones or any case holding that a

1  confidential relationship exists in similar circumstances.[11]  Plaintiffs disavow any argument that

2  "casinos and their patrons are engaged in a confidential relationship as a matter of law" or that "a

3  confidential relationship would exist as a matter of law."  Opp. at 48.  Plaintiffs have not and cannot

4  plead a fiduciary or confidential relationship to allow their constructive fraud claim to proceed.

5      Plaintiffs independently have not pled "an act or omission" by Stones on which they relied

6  except in the most conclusory fashion possible.  Plaintiffs do not contest their constructive fraud

7  allegations must meet Rule 9(b)'s specificity requirements.  *See Rose v. J.P. Morgan Chase, N.A.*,

8  2012 WL 1574821, at *1 (E.D. Cal. May 3, 2012) (Shubb, J.).  They do not meet that standard.

### 3.  Plaintiffs' Negligent Misrepresentation Claim Fails to Adequately Allege Any Actionable Misrepresentation.

11      Plaintiffs' negligent misrepresentation claim fails to identify an actionable affirmative

12  representation or a duty and falls short of Rule 9(b)'s pleading standards.

13      Plaintiffs purport to identify two types of affirmative misrepresentations: (1) that Mr. Postle

14  was "an honest and extraordinary poker player" and (2) that "Stones would cover up for [Mr.

15  Postle] by changing its on-screen graphics and announcing the existence of a technical mistake."

16  Opp. at 54.  These do not constitute actionable objective misrepresentations but rather implied

17  representations that Mr. Postle was not cheating.  The first asserted representation is also a

18  statement of opinion, not an objective misrepresentation.  The second asserted representation is not

19  included in Plaintiffs negligent misrepresentation claim.  *See* FAC ¶¶ 225-239.  And it remains

20  uncertain how purported misrepresentations were made to all but perhaps Ms. Brill and Ms. Mills

21  or how Plaintiffs relied on them.[12]

22      Plaintiffs' negligent misrepresentation claim must satisfy Rule 9(b)'s strict pleadings

23  requirements because it sounds in fraud.  As Stones explained in its Motion, many courts have held

24  that negligent misrepresentation claims always must satisfy Rule 9(b).  Mot. at 27.  Even claims

25  that do not typically need to satisfy Rule 9(b), though, must do so if the claims are grounded in

26  fraud.  *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003).  Plaintiffs'

27

28  [11] Plaintiffs also rely on Pennsylvania cases, Opp. at 48, which have no bearing on California law.
[12] To the extent Ms. Brill and Ms. Mill's negligent misrepresentation claim depends on the statements allegedly made to them, Opp. at 54, it fails for the reasons above.

negligent misrepresentation claim sounds in fraud.  They allege a fraudulent scheme in which Stones knew or should have known that Mr. Postle was cheating and hid that from Plaintiffs.  *See* FAC ¶¶ 232-236.  Plaintiffs make no attempt to explain how their negligent misrepresentation claim could meet Rule 9(b) if applied, and so have forfeited any such argument.  *See* Opp. at 53 ("However, to the extent this Honorable Court believes otherwise, they equally maintain the claim is backed by sufficient detail to adhere to the more rigorous pleading standard."); *Hanson v. Neuschmid*, 2019 WL 1493193, at *31 n.36 (E.D. Cal. Apr. 4, 2019) (treating as waived an argument made "in a single conclusory paragraph without citation to authority"); *Kephart v. City of Bakersfield*, 2005 WL 1704463, at *27 (E.D. Cal. July 16, 2005) ("Plaintiff's arguments consist of nothing more than conclusory statements, without any citation to facts or controlling law.").

### D.   Plaintiffs Fail to Allege A Cognizable CLRA Claim.

#### 1.   Plaintiffs Fail to Allege Conduct Falling Within the CLRA Definitions.

Plaintiffs' Opposition ignores the cases and complaint citations from the Motion showing that their claim falls outside of the CLRA.  Plaintiffs, based on their own allegations, were not consumers seeking a good or service for personal, family, or household purposes. They were instead gamblers seeking to maximize their profits.  FAC ¶ 192 (alleging that each Plaintiff was "deprived of the opportunity to maximize her or his respective profits in an honest poker game, while playing on Stones Live Poker").[13]

Plaintiffs assert that the CLRA does not require a formal contract to constitute the "agreement" required by the statute, but they identify no agreement at all with Stones—only their apparent subjective impression that Stones is to blame for their losses to Mr. Postle.[14]  Opp. at 57-58.  For example, they assert that the "various services Stones provided to the Plaintiffs were intended to create an enjoyable and safe atmosphere for consumers, situationally analogous to a

[13] Plaintiffs' argument that chips used to play poker constituted "tangible chattels bought or leased for use primarily for personal, family, or household purposes" under the CLRA is frivolous. "Chips" are just an alternative form of cash to facilitate the play of the game.

[14] If Plaintiffs are arguing that there was an implied contract for the purposes of the CLRA, Plaintiffs must also concede that the economic loss rule applies to their negligence claims, where they conceded that the rule at least applies to cases involving contracts, as discussed *supra*.

1 barbershop, where patrons can enjoy the surroundings and entertainment while the establishment

2 provides a personal service," Opp. at 57, but identify no factual allegations that Stones shared their

3 view in a way that would create an agreement between Plaintiffs and Stones.

4        The CLRA is not meant to address Plaintiffs' general grievance that "[t]he business

5 practices of Stones, alleged throughout the Complaint, undoubtedly work against the common good

6 of the general population and California's public policy." Opp. at 58. Because Plaintiffs' claim

7 falls outside of the CLRA's definitions, their CLRA claim must be dismissed. *See Rojas-Lozano v.*

8 *Google, Inc.*, 159 F. Supp. 3d 1101, 1115-17 (N.D. Cal. 2016) (online software was not a "good or

9 service" within the CLRA definition); *Balsam v. Trancos, Inc.*, 203 Cal. App. 4th 1083, 1105-08

10 (2012) (plaintiff was not a "consumer" of goods or services under the CLRA) *as modified on denial*

11 *of reh'g* (Mar. 21, 2012); *see also Corral v. Nationstar Mortg., LLC*, 2020 WL 802966, at *5

12 (E.D. Cal. Feb. 18, 2020) (ancillary services do not bring mortgage loan within definition of

13 CLRA); *Friedman v. Old Republic Home Prot. Co., Inc.*, 2013 WL 12371869, at *6-7 (C.D. Cal.

14 Sept. 9, 2013) (provision of home warranties not a good or service under CLRA); *Robinson v.*

15 *HSBC Bank USA*, 732 F. Supp. 2d 976, 987 (N.D. Cal. 2010) ("As defendant points out, in this case

16 there was no consumer transaction or attempted transaction to which plaintiffs were a party.").

17            **2.**       **Plaintiffs Provided Fatally Defective Notice.**

18        Plaintiffs seemingly admit that the CLRA violation alleged in their FAC was not in the

19 purported notice letter. *See* Opp. at 60. Plaintiffs argue that requiring compliance with the CLRA's

20 notice mandate would be "purely dilatory and ministerial in nature," but failure to adequately notice

21 the purported CLRA violation is grounds for dismissal with prejudice. *See Laster v. T-Mobile USA,*

22 *Inc.*, 407 F. Supp. 2d 1181, 1196 (S.D. Cal. 2005) (finding strict compliance with notice mandate

23 "required to accomplish the [CLRA's] goals of expeditious remediation *before* litigation" and

24 dismissing with prejudice (emphasis added)), *aff'd*, 252 F. App'x 777 (9th Cir. 2007).

25        Plaintiffs appear to assert that their initial complaint captured the essence of their CLRA

26 allegations, but that does not suffice. *See Von Grade v. Sprint PCS*, 312 F. Supp. 2d 1285, 1304

27 (S.D. Cal. 2003) (dismissing CLRA claim with prejudice because plaintiff's post-complaint letter

28 and attempts to amend the complaint were "all part of the post-complaint litigation process, [and

did] not satisfy the [notice] requirements of § 1782."); *Cattie v. Wal-Mart Stores, Inc.*, 504

F. Supp. 2d 939, 950 (S.D. Cal. 2007)  ("[p]ermitting [p]laintiff to seek damages first and then later,

in the midst of a lawsuit, give notice and amend would destroy the notice requirement's utility, and

undermine the possibility of early settlement."); *Sanchez v. Wal-Mart Stores, Inc.*, 2007 WL

1345706, at *3 (E.D. Cal. May 8, 2007) (notice must precede the filing of plaintiff's action for

CLRA damages by at least thirty days).  To the extent Plaintiffs argue that their initial complaint

actually alleged a CLRA violation, that claim too would fail for lack of adequate notice.  *See*

*Outboard Marine Corp. v. Super. Ct.*, 52 Cal. App. 3d 30, 40-41 (1975), *abrogated in unrelated*

*part by* Cal. Civ. Code § 1752.

### E.  Ms. Brill's Claim Asserting Libel Per Se Fails.

Ms. Brill has not stated a claim for libel per se and disavows a claim for libel *per quod*.

Plaintiffs base their libel argument solely on an analogy to *Yow v. National Enquirer, Inc.*, 550

F. Supp. 2d 1179 (E.D. Cal. 2008).  Opp. at 60-62.  But the plaintiff in *Yow* was expressly identified

in the allegedly libelous document.  *Yow*, 550 F. Supp. 2d at 1181.  And even though the article

specifically mentioned the plaintiff, *Yow* described "the language of the article" as only "marginally

satisf[ying] the 'of and concerning' re[qui]rement."  *Id*. at 1190.  The allegations here are much

weaker.

Stones did not, as Plaintiffs suggest, make "a public statement – that Ms. Brill's allegations

about Mr. Postle were 'completely fabricated.'"  Opp. at 62.  The tweet generically referred to

"allegations."  RJN Ex. C; FAC ¶ 269.  The assertion that Stones' tweet referred to Ms. Brill

because both Ms. Brill's allegations and Stones' tweet were on Twitter is not sufficient.  *Cf.* Opp. at

62 ("on the same social media platform"); *see Todd v. Lovecruft*, 2020 WL 60199, at *16

(N.D. Cal. Jan. 6, 2020) (requiring references to other tweets to derive defamatory connection

meant that a statement was not libel per se).  The focus is on whether the connection is drawn

within the same publication.  *Yow*, 550 F. Supp. 2d at 1189.  Plaintiffs still have not explained how

the tweet by Stones referred to Ms. Brill except by the *ipse dixit* allegation that someone reading the

tweet would just know that it referred to Ms. Brill.  Plaintiffs do not respond to the cases cited by

Stones other than *Yow* that demonstrate the requirement of specific factual allegations about how

the defamatory statement referred to the plaintiff.  *See Williams v. Salvation Army*, 2014 WL 6879936, at *2 (C.D. Cal. Dec. 4, 2014); *Art of Living Found. v. Does*, 2011 WL 2441898, at *7 (N.D. Cal. June 15, 2011).

Plaintiffs argue that Ms. Brill was "known to be the person who had accused Mr. Postle of cheating on Stones Live Poker broadcasts," Opp. at 62, but do not identify the basis for such an assertion with respect to Stones' tweet.  Even if Plaintiffs had identified the basis for that assertion, the potential claim would be for libel *per quod* because it would require special knowledge or reference to additional materials outside of the allegedly offending tweet.  *See Palm Springs Tennis Club v. Rangel*, 73 Cal. App. 4th 1, 5 (1999).  Plaintiffs do not contest that Ms. Brill cannot state a claim for libel *per quod* because she has suffered no special damages.

### F.    The FAC Should be Dismissed with Prejudice.

Plaintiffs have already had an opportunity to amend to address the concerns raised by Stones.  In 56 pages, Plaintiffs failed to identify additional allegations they could make that would state claims for relief.  They should not be granted leave to amend.

Plaintiffs purport to identify a scattershot 17 dimensions in which they could supplement their complaint, but none would support a viable claim on which the Court could grant relief.  Most importantly, none of the listed elaborations address California's bar on recovery of damages related to gambling based on proximate cause and public policy.  None address the unprecedented nature of the negligence duty Plaintiffs seek to impose on Stones.  None address the fatal deficiencies with respect to allegations of reliance by all or almost all of the nearly 90 Plaintiffs or other allegations required to support their fraud-based claims.  None are sufficient to place Plaintiffs' alleged injuries within the CLRA's definitions.  None add facts sufficient to show a fiduciary or confidential relationship between Stones and Plaintiffs.  And none assist Plaintiffs in demonstrating that Stones' tweet defamed Ms. Brill.  Leave to amend is therefore futile and should be denied.  *See Wages v. Internal Revenue Serv.*, 915 F.2d 1230, 1235 (9th Cir. 1990); *Monteforte v. Bank of New York Mellon Tr. Co. NA*, 2017 WL 3913869, at *3 (E.D. Cal. Sept. 7, 2017) (Shubb, J.) ("[L]eave to amend need not be granted when amendment would be futile.").

III.     CONCLUSION

For the reasons above and in Stones' Motion to Dismiss, the Court should dismiss with prejudice all of the claims against Stones.

Dated:  May 11, 2020                    Respectfully submitted,

By: /s/ Mark C. Mao
Mark Mao
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Phone: (415) 293-6800
Fax: (415) 293-6899
mmao@bsfllp.com

Michael Lipman
Karen L. Alexander
DUANE MORRIS LLP
750 B Street, Suite 2900
San Diego, CA 92101-4681
Phone: (619) 744-2200
Fax: (619) 744-2201
mllipman@duanemorris.com
klalexander@duanemorris.com

Heather U. Guerena
7727 Herschel Avenue
La Jolla, CA 92037
Phone: (858) 866-1020
Fax: (858) 551-4388
huguerena@elevationca.com

*Attorneys for Defendant King's Casino Management Corp., successor by merger with King's Casino, LLC*

## PROOF OF SERVICE

I, Alexander J. Holtzman, declare:

I am a citizen of the United States and employed in the City and County of San Francisco, CA.  I am over the age of 18 and not a party to the within action; my business address is 44 Montgomery St., 41st Floor, San Francisco, CA  94104.

On May 11, 2020, I served the following document(s) described as:

**DEFENDANT KING'S CASINO MANAGEMENT CORP.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

☐   **BY FACSIMILE TRANSMISSION**: As follows: The papers have been transmitted to a facsimile machine by the person on whom it is served at the facsimile machine telephone number as last given by that person on any document which he or she has filed in the cause and served on the party making the service. The copy of the notice or other paper served by facsimile transmission shall bear a notation of the date and place of transmission and the facsimile telephone number to which transmitted or be accompanied by an unsigned copy of the affidavit or certificate of transmission which shall contain the facsimile telephone number to which the notice of other paper was transmitted to the addressee(s).

☐   **BY MAIL**: As follows: Deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid.

☐   **BY OVERNIGHT MAIL**: As follows: I am readily familiar with the firm's practice of collection and processing correspondence for overnight mailing. Under that practice, it would be deposited with overnight mail on that same day prepaid at San Francisco, CA in the ordinary course of business.

☒   **BY ELECTRONIC MAIL TRANSMISSION**:  By electronic mail transmission from aholtzman@bsfllp.com on May 11, 2020, by transmitting a PDF format copy of such document(s) to each such person at the e-mail address(es) listed below their address(es).  The document(s) was/were transmitted by electronic transmission and such transmission was reported as complete and without error.

Case No. 2:19-CV-02027-WBS-AC

Michael L. Postle
3724 Deer Walk Way
Antelope, CA 95843
JRSTOX@yahoo.com

*Pro Se*

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on May 11, 2020, at San Francisco, CA.

_____

Alexander J. Holtzman

Case No. 2:19-CV-02027-WBS-AC