1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10                              ----oo0oo----

11

12   VERONICA BRILL; KASEY LYN MILLS;        No. 2:19-cv-02027 WBS AC
     MARC GOONE; NAVROOP SHERGILL;
13   JASON SCOTT; AZAAN NAGRA; ELI
     JAMES; PHUONG PHAN; JEFFREY
14   SLUZINSKI; HARLAN KARNOFSKY;            MEMORANDUM AND ORDER RE:
     NATHAN PELKEY; MATTHEW ALLEN            DEFENDANTS' MOTIONS TO
15   HOLTZCLAW; JON TUROVITZ; ROBERT         DISMISS
     YOUNG; BLAKE ALEXANDER KRAFT;
16   JAMAN YONN BURTON; MICHAEL
     ROJAS; HAWNLAY SWEN; THOMAS
17   MORRIS III; PAUL LOPEZ; ROLANDO
     CAO; BENJAMIN JACKSON; HUNG SAM;
18   COREY CASPERS; ADAM DUONG;
     DUSTIN MCCARTHY; CHOU VINCE
19   XIONG; BRIAN OLSON; CAMERON
     SMITH; JORDAN DIAMOND; ARONN
20   SOLIS; ALISHA DANIELS-DUCKWORTH;
     CHRISTIAN SOTO VASQUEZ; ANDREW
21   HERNANDEZ; DARRELL STEED; ARISH
     S. NAT; KYLE KITAGAWA; BRIAN
22   MICHAEL RAASCH; ZEEV MALKIN;
     DAVID CRITTENTON; PATRICK
23   LAFFEY; PARAS SINGH; FIRAS
     BOURI; IDRIS M. YONISI; JOSHUA
24   WHITESELL; DAVID DUARTE; HARUN
     UNAI BEGIC; BRAD KRAFT; TAYLOR
25   CARROLL; ELIAS ABOUFARES; TYLER
     DENSEN; ANDREW LOK; JAKE
26   ROSENSTIEL; ANTHONY AJLOUNY;
     HECTOR MARTIN; DALE MENGHE;
27   SCOTT SCHLEIN; AUGUSTE SHASTRY;
     NICHOLAS COLVIN; JASON MARKWITH;
28   BRIAN WATSON; SHANE GONZALES;

                                    1

1  KATHERINE STAHL; MIKE NELSON;
   BRANDON STEADMAN; BRYANT MILLER;
2  HONG MOON; MATTHEW GOUGE;
   NICHOLAUS WOODERSON; CARLOS
3  WELCH; ARIEL REID; DAN MAYER;
   ANTHONY GIGLINI; RYAN JACONETTI;
4  ARIEL CRIS MANIPULA; TRENTON
   SIDENER; JAMES JOHN O'CONNOR;
5  PATRICK VANG; MARCUS DAVIS; ADAM
   COHEN; DERICK COLE; AARON
6  MCCORMACK; BRENNEN ALEXANDER
   COOK; MICHAEL PHONESAVANH
7  RASPHONE; BENJAMIN TENG; SCOTT
   SORENSON; ANTHONY HUGENBERG; and
8  BILLY JOE MESSIMER,

9            Plaintiffs,

10     v.

11 MICHAEL L. POSTLE; KING'S
   CASINO, LLC D/B/A STONES
12 GAMBLING HALL; JUSTIN F.
   KURAITIS; JOHN DOES 1-10; and
13 JANE DOES 1-10,

14           Defendants.

15

16                  ----oo0oo----

17        Before the court are motions to dismiss brought by

18 defendants King's Casino, LLC ("King's Casino") (Docket No. 45),

19 Justin F. Kuraitis, (Docket No. 46), and Michael Postle (Docket

20 No. 50).

21 I.   Background

22        King's Casino operates Stones Gambling Hall ("Stones")

23 in Citrus Heights, California.  (First Am. Compl. ("FAC") ¶¶ 97,

24 104 (Docket No. 40).)  Starting in January 2018, Stones publicly

25 broadcasted "live" poker games played at its casino several

26 nights a week through a program called "Stones Live Poker".  (Id.

27 ¶¶ 110, 116.)  Like most poker games, participants began Stones

28 Live Poker by paying Stones a small fee, called "the rake," to

                              2

1  organize and run the game.  (Id. ¶¶ 105, 185.)  Unlike most poker

2  games, however, the poker table was surrounded by video cameras

3  and contained cards that were imbedded with radio-frequency

4  identification capabilities that made it possible to transmit the

5  composition of each player's hand and identity to a control room.

6  (Id. ¶¶ 105-06.)  Stones combined the film from the cameras with

7  the information from the card sensors to provide viewers with an

8  omniscient view of the game.  (Id. ¶ 107.)  While characterized

9  as "live," the feeds are often delayed by fifteen to thirty

10  minutes to prevent cheating.  (Id. ¶ 108.)  Justin Kuraitis, a

11  mid-level employee of Stones, directed the series.  (Id. ¶ 115.)

12      Michael Postle frequently played in the Stones Live

13  Poker games and quickly became known for his success.  (Id. ¶¶

14  116-18, 120.)  From July 18, 2018 to September 29, 2019, Postle

15  allegedly recorded net winnings in more than 94% of the games in

16  which he played.  (Id. ¶ 120.)  According to the FAC, Postle

17  became an "in-house celebrity."  (Id. ¶ 4.)  Stones created

18  graphics of Postle depicted as a "deity-like individual imbued

19  with omniscient powers" and allegedly compensated him to host his

20  own poker show, 'Postle and Pals!'.  (Id. ¶¶ 118, 173-74.)

21  Kuraitis told other players that Postle's skill was simply "on a

22  different level."  (Id. ¶ 164.)

23      Not everyone agreed.  Plaintiff Veronica Brill took her

24  concerns that Postle was cheating to Kuraitis on March 20, 2019.

25  (Id. ¶ 159.)  She claimed Postle was using a concealed cell phone

26  to communicate with at least one unnamed confederate while

27  playing the game.  (Id. ¶¶ 127-28.)  This John (or Jane) Doe

28  would allegedly furnish him with information about the cards of

1  his competitors, and he would play his hand accordingly.  (Id.)

2  Kuraitis responded by insisting the game was "one hundred percent

3  secure."  (Id. ¶ 160.)  After publicly tweeting out her

4  allegations against Postle, Stones tweeted that it had "conducted

5  a full investigation & found no evidence that any cheating []

6  occurred."  (Id. ¶ 166.)

7       Brill, unsatisfied, and with over eighty other

8  plaintiffs, followed with this action against defendants.

9  Plaintiffs allege six causes of action against King's Casino,

10  three against Kuraitis, and five against Postle himself.  (See

11  generally FAC.)  Each defendant submitted its own motion to

12  dismiss, although both Postle and Kuraitis joined King's motion.

13  II.  Standard

14       On a Rule 12(b)(6) motion, the inquiry before the court

15  is whether, accepting the allegations in the complaint as true

16  and drawing all reasonable inferences in the plaintiffs' favor,

17  the plaintiffs have stated a claim to relief that is plausible on

18  its face.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "A

19  claim has facial plausibility when the plaintiff pleads factual

20  content that allows the court to draw the reasonable inference

21  that the defendant is liable for the misconduct alleged."  Id.  A

22  complaint that offers mere "labels and conclusions" will not

23  survive a motion to dismiss.  Id. (citations and quotations

24  omitted).

25       Normally, pleadings are subject to Federal Rule of

26  Civil Procedure 8.  Rule 8(a) provides that: "[a] pleading that

27  states a claim for relief must contain: (1) a short and plain

28  statement of the grounds for the court's jurisdiction . . . (2) a

short and plain statement of the claim showing that the pleader

is entitled to relief; and (3) a demand for the relief sought."

Fed. R. Civ. P. 8(a).  However, for claims involving fraud,

plaintiffs must satisfy the pleading requirements of Federal Rule

of Civil Procedure 9(b).  Rule 9(b) requires parties to "state

with particularity the circumstances constituting fraud or

mistake."  Fed. R. Civ. P. 9(b).  To successfully plead fraud

under Rule 9(b), "a pleading must identify the who, what, when,

where, and how of the misconduct charged, as well as what is

false or misleading about the purportedly fraudulent statement,

and why it is false."  Davidson v. Kimberly-Clark Corp., 889 F.3d

956, 964 (9th Cir. 2018) (internal citation omitted).

III. <u>Discussion</u>

    A.   <u>King's Motion to Dismiss</u>

       King's Casino moves to dismiss all six causes of action

alleged against its property, Stones: negligent misrepresentation

(Claim 3), negligence (Claim 6), constructive fraud (Claim 7),

fraud (Claim 8), libel per se against plaintiff Veronica Brill

(Claim 9), and violation of California's Consumer Legal Remedies

Act ("CLRA"), Cal. Civ. Code § 1750, <u>et seq.</u> (Claim 10).  (King's

Mot. at 5.)  At the outset, King's Casino argues plaintiffs'

claims for negligent misrepresentation, negligence, constructive

fraud, fraud, and the CLRA are not cognizable under California

law because California public policy bars judicial intervention

in gambling disputes, in part because the asserted damages are

inherently speculative.  (King's Mot. at 7.)  In opposition,

plaintiffs argue California courts have "regularly recognize[d]

the justiciability of gaming-centric disputes" and seek to

1  recover their gambling losses (including money lost to Postle and

2  loss of opportunity) and the rake, paid to Stones before each

3  hand.  (Pls.' Opp'n to King's Mot. at 12-13, 15-25 (Docket No.

4  56); FAC ¶¶ 184-87, 236, 252, 260, 266.)

5      In their briefs and at oral argument, both sides

6  substantially relied on the California Court of Appeal's decision

7  in Kelly v. First Astri Corp.  72 Cal. App. 4th 462 (4th Dist.

8  1999), review denied, No. S080081 (Cal. Sept. 1, 1999).  In

9  Kelly, three blackjack players sued a casino, the casino's

10  manager, and one of the casino's employees for intentional

11  misrepresentation, fraudulent concealment, conversion, money had

12  and received, negligence, negligent supervision, and civil

13  conspiracy following the discovery of a marked card scheme at the

14  casino.  Id. at 468.  The court upheld the trial court's grant of

15  summary judgment to defendants because plaintiffs' action to

16  recover his gambling losses were barred "under California's

17  strong and long-standing public policy against judicial

18  resolution of civil claims arising out of lawful or unlawful

19  gambling."  Id. at 466.

20      While the Kelly court recognized California's "public

21  attitudes about gambling" had shifted substantially since the

22  Supreme Court of California refused to recognize a cause of

23  action on moral grounds, see id. at 489, it held that the "public

24  acceptance of some forms of gambling" did little to create an

25  independent cause of action to recover gambling losses absent

26  legislative action to "enact[] a statute permitting the use of

27  the process of the courts in California to resolve . . . gambling

28  loss claims."  Id. at 489.  Today, the California state

1  legislature still has not created a statutory right to permit

2  individuals to recover their gambling losses, although other

3  states have done so.  See, e.g., Illinois Loss Recovery Act, 720

4  ILCS 5/28-8, et seq.

5          King's Casino argues that California's public policy

6  against recovery of gambling losses and gambling debts should be

7  sufficient to foreclose plaintiffs' claims here, but even if it

8  is not, the speculative nature of the damages should be.  (King's

9  Mot. at 5-7.)  Relying principally on Vu v. California Commerce

10 Club, Inc., 58 Cal. App. 4th 229 (2d Dist. 1997), defendant

11 argues that California courts have found "winning or losing at

12 card games is inherently the product of other factors, namely

13 individual skill and fortune or luck.  It simply cannot be said

14 with reasonable certainty that the intervention of cheating such

15 as here alleged was the cause of a losing hand."  (King's Mot. at

16 5-6 (quoting Vu, 58 Cal. App. 4th at 233).)  The Vu court's

17 finding is consistent with Kelly's bar on recovering gambling

18 losses.  However, neither court fully addresses whether

19 California's public policy sweeps broadly enough to preclude

20 damages that can be proved with reasonable certainty.

21          Plaintiffs seek, in part, to recover the rake -- the

22 fixed collection rate Stones collected before each poker hand.

23 (See FAC ¶¶ 184-87, 236, 252, 260, 266, 275-276, 278.)  The rake

24 represents a cognizable measure of economic harm that is in no

25 way tied to the ultimate outcome of a particular hand of poker.

26 Unlike damage claims predicated on lost opportunities, the rake

27 is not "speculative," or the product of chance.  These amount to

28 "recovery of the monies paid to administer the games fairly."

1   (Pls.' Opp'n to King's Mot. at 13.)

2          It does not appear that California's public policy

3   barring judicial intervention to recover gambling losses sweeps

4   so broadly as to include the concrete, identifiable damages

5   represented by the rake.  Accordingly, to the extent that "an

6   appreciable portion of the damages sought by Plaintiffs" are not

7   reliant on gambling losses and are instead predicated on the rake

8   alone, (Pls.' Reply to King's at 10; FAC ¶¶ 184-93), the court

9   proceeds to consider whether plaintiffs' claims are sufficient to

10  withstand King's Casino's motion to dismiss.

11              1.   Fraud

12         Plaintiffs Veronica Brill and Kasey Mills[1] allege a

13  fraud claim against Stones.  (Id. ¶¶ 261-67.)  In California, the

14  elements of fraud are: "(a) a misrepresentation (false

15  representation, concealment, or nondisclosure); (b) knowledge of

16  falsity (or scienter); (c) intent to defraud, i.e., to induce

17  reliance; (d) justifiable reliance; and (e) resulting damage."

18  Lazar v. Superior Court, 12 Cal. 4th 631, 638 (1996).

19         Allegations of fraud must conform to Rule 9(b)'s

20  strictures.  Fed. R. Civ. P. 9(b).  Brill and Mills allege that

21  defendant Kuraitis defrauded them while acting for himself and on

22  behalf of Stones on March 20, 2019 when he claimed Postle was not

23  cheating when they confronted him at the casino.  (FAC ¶¶ 159,

24  164, 262, 267.)  However, Brill and Mills fail to particularly

25  plead the damages they suffered as a result of this alleged

26  ─────────────

27         [1]   Marc Goone also originally pursued a claim against
    Stone for fraud in the FAC, though that claim was voluntarily
    dismissed.  (FAC ¶ 262; Pls.' Opp. to King's Mot. at 33 n.11.)

28

1   fraud.

2          Specifically, Brill and Mills do not allege what days

3   they played poker at Stones Live Casino after they were

4   defrauded.[2]  They do not allege the cost of the rake during each

5   game, let alone what they contributed individually.[3]  Instead,

6   they offer nothing more than a general allegation that the rake

7   amounted to "tens of thousands of dollars during the life of Mr.

8   Postle's scheme." (FAC ¶ 186.)  This general allegation is not

9   sufficient to satisfy Rule 9(b)'s rigorous demands.  However,

10  plaintiffs have represented to the court that they are prepared

11  to "identify the rake paid over to Stones in the [] subject poker

12  games." (Pls.' Opp'n to King's at 54.)  Accordingly, plaintiffs'

13  fraud claims must be dismissed with leave to amend to afford

14  plaintiffs an opportunity to meet Rule 9(b)'s particularity

15  requirement.

16          2.   Constructive Fraud

17          The elements for constructive fraud are similar to

18  fraud, although it requires "(1) a fiduciary or confidential

19  relationship; (2) nondisclosure (breach of fiduciary duty); (3)

20  intent to deceive, and (4) reliance and resulting injury

21  (causation)." Prakashpalan v. Engstrom, Lipscomb & Lack, 223

22  _____

23        [2]    The court notes that while plaintiffs alleged a number
    of dates in connection with their RICO claim against Mr. Postle,
24  they do not offer the same particularly to support their fraud
    claim.  (FAC ¶ 205.)  The court also notes a vast majority of the
25  games (see id. ¶ 205(i) - (xliii)) also occurred before Brill and
    Mills purportedly approached Kuraitis in March 2019.

26        [3]    For the reasons described above, the court will only
27  consider plaintiffs' claims for damages "equal to monies paid to
    Stones as and for the rake."  (FAC ¶ 226.)

28

1   Cal. App. 4th 1105, 1131 (2d Dist. 2014).  Notably, constructive

2   fraud is "applicable only to a fiduciary or confidential

3   relationship."  Id. (internal citations and quotations omitted).

4        "Before a person can be charged with a fiduciary

5   obligation, he must either knowingly undertake to act on behalf

6   and for the benefit of another, or must enter into a relationship

7   which imposes that undertaking as a matter of law."  City of Hope

8   Nat'l Med. Ctr. v. Genentech, Inc., 43 Cal. 4th 375, 386 (2008)

9   (internal citations and modifications omitted).  Here, while

10  plaintiffs allege that Stones "had a legal duty to monitor the

11  Stones Live Poker game for cheating" and Stones breached this

12  duty by "concealing from the Plaintiffs allegations of cheating

13  and fraud on the part of Mr. Postle," they fail to allege any

14  fiduciary obligation to support a constructive fraud claim.  (See

15  FAC ¶¶ 255, 257.)

16       Plaintiffs claim they were particularly vulnerable to

17  Stone's exploitation, and this vulnerability gives rise to a

18  fiduciary relationship.  (Pls.' Opp'n to King's Mot. at 39-41.)

19  But as the California Supreme Court articulated in City of Hope,

20  vulnerability, standing alone, does not necessarily create

21  fiduciary obligations unless "one party's vulnerability is so

22  substantial as to give rise to equitable concerns underlying the

23  protection afforded by the law governing fiduciaries."  43 Cal.

24  4th at 345.  For this reason, "[v]ulnerability 'usually arises

25  from advanced age, youth, lack of education, weakness of mind,

26  grief, sickness, or some other incapacity' that preexists -- as

27  opposed to arising from -- the transaction at issue."  Alvarado

28  Orthopedic Res., L.P. v. Linvatec Corp., No. 11-CV-246 IEG (RBB),

10

1  2011 WL 3703192, at *4 (S.D. Cal. Aug. 23, 2011) (citing TMX

2  Funding, Inc. v. Impero Techs., Inc., No. 5:10-cv-00202, 2010 WL

3  4774791, at *6 (N.D. Cal. Nov. 16, 2010) (quoting Richelle L. v.

4  Roman Catholic Archbishop, 106 Cal. App. 4th 257, 273 (1st Dist.

5  2003)).

6         Here, plaintiffs do not allege that they were members

7  of one of these vulnerable communities before they engaged in the

8  poker game, either individually or collectively. (See FAC ¶¶

9  254-60.)  Instead, their claim is unpersuasively predicated on

10  the "transaction at issue."  See Alvarado, 2011 WL 3703192, at

11  *4.  Plaintiffs have failed to adequately allege a fiduciary or

12  confidential relationship between themselves and Stones that

13  would support a claim for constructive fraud.  Accordingly,

14  plaintiffs' constructive fraud claim must also be dismissed.

15              3.   Negligent Misrepresentation

16         District courts in the Ninth Circuit appear to be

17  divided on whether claims for negligent misrepresentation need to

18  satisfy the heightened pleading requirements of Rule 9(b).  See

19  Price Simms Holdings LLC v. Candle3, LLC, No. 2:18-CV-1851 WBS

20  KJN, 2018 WL 6271580, at *5 n.7 (E.D. Cal. Nov. 30, 2018) (citing

21  Petersen v. Allstate Indem. Co., 281 F.R.D. 413 (C.D. Cal. 2012)

22  (discussing the holdings of district courts in the Ninth Circuit

23  that Rule 9(b)'s heightened pleading standard applies to

24  negligent misrepresentation claims before holding that Rule

25  9(b)'s heightened pleading standard does not apply to negligent

26  misrepresentation claims)).  The court need not express an

27  opinion on that issue here, however, because plaintiffs have

28  failed to fulfill the essential elements of negligent

1  misrepresentation.

2      The elements for negligent misrepresentation are almost
3  the same as the elements for fraud under California law.  But
4  rather than "knowing" the representation was false at the time it
5  was made, the defendant must have made the representation
6  "without reasonable ground for believing it was true."  West v.
7  JPMorgan Chase Bank, 214 Cal. App. 4th 780, 792 (4th Dist. 2013).
8  Plaintiffs allege Stones engaged in negligent misrepresentation
9  by "conducting Stones Live Poker games in a licensed casino,"
10 which created "an implicit representation" that players would be
11 "protected from the cheating of other players through utilization
12 of adequate and sufficient security measures and protocols."
13 (FAC ¶ 229.)  Principally, plaintiffs claim Stones knew Postle
14 was cheating "because at least one agent of Stones served as a
15 John Doe or Jane Doe confederate of Mr. Postle."  (Id. ¶ 233.)

16     Critically, plaintiffs failed to disclose the identity
17 of the alleged confederate.  (See id.)  Without this information,
18 the court cannot adequately assess the intent to defraud, whether
19 the plaintiffs' reliance was justified, or whether Stones held
20 itself out as an honest business "without reasonable ground for
21 believing" it to be true.  See West, 214 Cal. App. 4th at 792.
22 At the same time, plaintiffs have represented they are prepared
23 to "allege the identity of Mr. Postle's chief confederate by name
24 and position."  (Pls.' Opp'n to King's Mot. at 54.)  Accordingly,
25 the negligent misrepresentation claim will be dismissed with
26 leave to amend.

27         4.   Consumer Legal Remedies Act

28     The CLRA prohibits "unfair methods of competition and

1  unfair or deceptive acts or practices undertaken by any person in

2  a transaction intended to result or which results in the sale or

3  lease of goods or services to any consumer." Cal. Civ. Code §

4  1770(a).  However, it is not "an otherwise applicable general

5  law" as the CLRA "applies only to transactions for the sale or

6  lease of consumer 'goods' or 'services' as those terms are

7  defined in the act." Fairbanks v. Superior Court, 46 Cal. 4th

8  56, 65 (2009).  A "consumer" is defined as "an individual who

9  seeks or acquires, by purchase or lease, any goods or services

10  for personal, family, or household purposes." Cal. Civ. Code §

11  1761(d).  "Services" are defined as "work, labor, and services

12  for other than a commercial or business use, including services

13  furnished in connection with the sale or repair of goods." Cal.

14  Civ. Code § 1761(b).  "Goods" are defined as "tangible chattels."

15  Cal. Civ. Code § 1761(a).

16      Neither party offers authority to support or refute the

17  proposition that poker is a "service" under the CLRA, nor is the

18  court aware of any California case directly addressing the issue.

19  Plaintiffs argue that "[t]he services Stones provided to

20  Plaintiffs -- the tables with requisite dealers, the supporting

21  staff of security, management, directors, food staff, and the

22  cage and its accompanying staff -- constitute services under the

23  statutory definition." (Pls.' Opp'n to King's Mot. at 48.)  But

24  by that logic, almost everything would fall under the definition

25  of "service," turning it into a "general law." See Fairbanks, 46

26  Cal. 4th at 65.  Gambling is not "work or labor, nor is it

27  related to the sale or repair of any tangible chattel." See id.,

28  46 Cal. 4th at 61 (holding life insurance is not a "service"

13

1  under the CLRA); see also Hall v. Sea World Entm't, Inc., No.

2  3:15-cv-660-CAB-RBB, 2015 WL 9659911, at *15 (S.D. Cal. 2015)

3  (finding ticket to enter an amusement park was not a "service"

4  under the CLRA).  To find what is inherently a game a "service"

5  requires a strained and unnatural reading of the statute.

6  Accordingly, plaintiffs' CLRA claim will be dismissed.

7            5.  Negligence

8            In California, the elements of negligence are: (1) a

9  legal duty to use reasonable care; (2) a breach of that duty; (3)

10  causation; and (4) damages.  See Ladd v. Cty. of San Mateo, 12

11  Cal. 4th 913, 917 (1996).  Where, as here, the plaintiffs do not

12  allege any physical harm, "[t]he economic loss rule has been

13  applied to bar a plaintiff's tort recovery of economic damages."

14  N. Am. Chem. Co. v. Superior Court, 59 Cal. App. 4th 764, 777 (2d

15  Dist. 1997).  Liability for purely economic loss is "the

16  exception, not the rule under [California Supreme Court]

17  precedents."  S. Cal. Gas Leak Cases, 7 Cal. 5th 391, 400 (2019)

18  (citation and internal quotations omitted).  However, plaintiffs

19  argue the "special relationship" exception to the economic loss

20  rule applies here.  (Pls.' Opp'n to King's Mot. at 27-29.)

21            The special relationship exception applies when "the

22  plaintiff was an intended beneficiary of a particular transaction

23  but was harmed by the defendant's negligence in carrying it out."

24  S. Cal. Gas Leak Cases, 7 Cal. 5th at 400 (citing J'Aire Corp. v.

25  Gregory, 24 Cal. 3d 799, 804 (1979)).  To determine whether the

26  parties had a special relationship, courts will consider "(1) the

27  extent to which the transaction was intended to affect the

28  plaintiff, (2) the foreseeability of harm to the plaintiff, (3)

1    the degree of certainty that the plaintiff suffered injury, (4)

2    the closeness of the connection between the defendant's conduct

3    and the injury suffered, (5) the moral blame attached to the

4    defendant's conduct and (6) the policy of preventing future

5    harm."  J'Aire, 24 Cal. 3d at 804.

6           The first factor alone may be dispositive if plaintiffs

7    fail to allege the transaction was intended to affect them

8    specifically, rather than any number of potential poker players.

9    See Greystone Homes, Inc. v. Midtec, Inc., 168 Cal. App. 4th

10   1194, 1230-31 (4th Dist. 2008).  Here, plaintiffs generally

11   allege that Stones breached a duty to them by "maintaining a

12   control room that did not adhere to prevailing industry standards

13   for security" and "not properly regulat[e] and/or supervis[e]"

14   employees in the performance of their duties.  (FAC ¶¶ 249-50.)

15   While plaintiffs claim in their opposition the game was "intended

16   to affect [them]" because "they are literally the consumers

17   paying Stones to operate those games and wager[] money in those

18   games," (see Pls.' Opp'n to King's Mot. at 28), this fails to

19   adequately suggest that any cheating was intended to specifically

20   affect them, rather than any possible poker player.  Their FAC is

21   similarly devoid of any such allegation.  Accordingly, because

22   the plaintiffs have failed to plausibly allege that they had a

23   special relationship with Stones, the economic loss rule will bar

24   their negligence action.

25          6.   Libel Per Se

26          Plaintiff laintiff Veronica Brill alleges she suffered

27   "bullying, harassment, and emotionally-taxing non-physical

28   attacks on social media" after Stones called her cheating

1  allegations "completely fabricated" on its social media account.
2  (FAC ¶¶ 269, 271.)

3      Under California law, the elements of defamation are:
4  "(a) a publication that is (b) false, (c) defamatory, and (d)
5  unprivileged, and that (e) has a natural tendency to injure or
6  that causes special damage." Taus v. Loftus, 40 Cal. 4th 683,
7  720 (2007).  Plaintiffs can bring a claim for either libel per se
8  or libel per quod.  Brill asserts a claim for libel per se.[4]

9      Libel per se occurs when the publication's "defamatory
10  meaning appears from the language itself without the necessity of
11  explanation or the pleading of extrinsic facts." Palm Springs
12  Tennis Club v. Rangel, 73 Cal. App. 4th 1, 5 (4th Dist. 1999).
13  "In defamation actions[,] the First Amendment . . . requires that
14  the statement on which the claim is based must specifically refer
15  to, or be 'of and concerning,' the plaintiff in some way."
16  Blatty v. N.Y. Times Co., 42 Cal. 3d 1033, 1042 (1986).  "[T]he
17  plaintiff need not be mentioned by name, but may be identified by
18  clear implication."  Id. at 1044 n.1.  "Whether defamatory
19  statements can reasonably be interpreted as referring to
20  plaintiffs is a question of law for the court." Tamkin v. CBS
21  Broad., Inc., 193 Cal. App. 4th 133, 146 (2d Dist. 2011).

22      The allegedly libelous tweet sent from the Stones Live
23  Poker account (@StonesLivePoker) reads in full:

24         Earlier this year an accusation was made that a
               player was cheating in our game[.]  We conducted
25

26      [4]    While Brill generally alleged a cause of action for
   libel in plaintiffs' FAC, the opposition clarifies that she is
27  alleging only libel per se because she does not allege the
   special damages required for libel per quod. (Pls.' Opp'n to
28  King's Mot. at 51); see also Cal. Civ. Code § 45a.

1
2
3

> a full investigation & found no evidence that
> cheating had occurred[.]  Stones Live stream
> remains a secure poker streaming platform[.]
> The recent allegations are completely
> fabricated[.]

4  (Request for Judicial Notice ("RJN"), Ex. C (Docket No. 47-3).)

5  Brill claims she was "known to be the person who had accused Mr.

6  Postle of cheating" on Twitter, and Stones' response on the same

7  platform means the post was "of and concerning" her.  (Pls.'

8  Opp'n to King's Mot. at 53.)

9       Plaintiff suggests this court's decision in Yow v.

10  National Enquirer, Inc., 550 F. Supp. 2d 1179 (E.D. Cal. 2008),

11  supports her contention that the tweet was "of and concerning"

12  her.  (Pls.' Opp'n to King's Mot. at 52-53.)  While the

13  defamatory article at issue in Yow did not expressly identify

14  the plaintiff, she was still identifiable by reasonable

15  implication because she was one of "four or five women" with

16  actor Mel Gibson at the time he was allegedly snorting "a mound

17  of cocaine."  550 F. Supp. 2d at 1187-88.  Here, "numerous

18  individuals" approached Mr. Kuraitis to accuse Postle of

19  cheating "as early as February 2019."  (FAC ¶ 155.)  However,

20  the allegedly libelous tweet was published on September 29,

21  2019.  (RJN, Ex. C.)  With 88 other plaintiffs in this action

22  and millions of users on Twitter, it is possible -- indeed,

23  quite probable -- that Stones' tweet could have been in

24  reference to any number of allegations, made by any number of

25  people.  Under California law, courts have consistently held

26  that plaintiffs cannot show that statements were "of and

27  concerning" them in "any group numbering over twenty-five."

28  Blatty, 42 Cal. 3d 1046 (internal citations omitted).  The need

1    to explain the statement and the extrinsic facts surrounding it

2    disqualifies it from meeting the elements for libel per se.  See

3    Palm Springs Tennis Club, 73 Cal. App. 4th at 5.  Accordingly,

4    Brill's libel claim will be dismissed.

5         B.   Kuraitis' Motion to Dismiss

6         Plaintiffs bring claims against defendant Justin

7    Kuraitis for negligent misrepresentation (Claim 3), negligence

8    (Claim 6), and fraud (Claim 8).  (See FAC ¶¶ 228, 246-47, 262-

9    64.)  Kuraitis moves to dismiss each claim against him and joins

10   in King's Motion insofar as plaintiffs' claims are plead against

11   them both.  (Kuraitis Mot. (Docket No. 46).)

12         1.   Fraud

13         As stated above, Brill and Mills' fraud allegation is

14   founded upon representations Kuraitis made to them while acting

15   "for himself and on behalf of Stones" in March 2019.  (See FAC ¶¶

16   159, 164, 262, 267.)  The court dismissed the claim against

17   Stones for failure to particularly plead damages.  See supra Part

18   III(A)(1).  The same rationale requires dismissal of their fraud

19   claim against Kuraitis, albeit for a slightly different reason.

20         Under California law, "the fact that the principal

21   becomes liable under the rules of vicarious liability . . . does

22   not exonerate an agent from liability for a tortious act

23   committed by the agent while acting under the authority of the

24   principal."  Peredia v. HR Mobile Servs., Inc., 25 Cal. App. 5th

25   680, 692 (5th Dist. 2018).  However, "agents are not vicariously

26   liable for the torts of their principals."  Id.  As previously

27   discussed, the plaintiffs may be able to proceed with their

28   claims to the extent they are predicated on the rake, because the

1  court assumes at this point in the proceedings that the rake is

2  not a "gambling loss" under <u>Kelly</u>.  <u>See</u> <u>supra</u> Part III(A).  But

3  if plaintiffs' damages are confined to the "monies paid to Stones

4  as and for the rake," to allow plaintiffs to proceed against

5  Kuraitis for damages predicated on money kept and collected by

6  Stones alone would be to hold an agent liable for the torts of

7  his principal.  (<u>See</u> FAC ¶ 266.)  Damages are an essential

8  element of fraud.  <u>Lazar</u>, 12 Cal. 4th at 638.  Without a

9  connection between Kuraitis and the rake, the claim cannot

10  proceed.

11            2.   <u>Negligent Misrepresentation</u>

12            Plaintiffs allege Kuraitis engaged in negligent

13  misrepresentation both individually and as an agent of Stones

14  when he "allayed suspicions of cheating by telling people Mr.

15  Postle's play of poker was simply on 'a different level,'" and

16  when he told "at least one Plaintiff that Stones undertakes a

17  quarterly security audit of its Stones Live Poker system."  (FAC

18  ¶ 228.)  Yet, as with the fraud claims and the negligent

19  misrepresentation claim brought against Stones, plaintiffs fail

20  to offer anything other than a general allegation that Kuraitis

21  "made these representations without a reasonable basis for

22  believing them to be true."  (<u>Id.</u> ¶ 232.)  Although plaintiffs

23  allege Kuraitis "continuously concealed allegations of cheating,"

24  they fail to identify the "John Doe or Jane Doe confederate"

25  responsible for aiding Postle, or whether Kuraitis knew of the

26  relationship.  (<u>Id.</u> ¶¶ 232-33.)  Since the plaintiffs have

27  represented they can "allege the identity of Mr. Postle's chief

28  confederate by name and position," (Pls.' Opp'n to King's Mot. at

1   54), however, the negligent misrepresentation claim will be

2   dismissed with leave to amend.

3          3.   Negligence

4          Again, the elements of negligence are: (1) a legal duty

5   to use reasonable care; (2) a breach of that duty; (3) causation;

6   and (4) damages.  See Ladd, 12 Cal. 4th at 917.  Plaintiffs again

7   do not allege any physical harm in connection with their

8   negligence claim against Kuraitis, instead alleging that he

9   "individually and as an agent of Stones" had "a duty to ensure

10  the game was carried out in a manner reasonably free of

11  cheating."  (FAC ¶¶ 245-46.)  Even assuming Kuraitis had a duty

12  to "the game," that would be a duty owed to his principal -- not

13  the plaintiffs.  "Where the effect of an agent's failure to

14  perform a duty owed by the principal is merely to cause economic

15  loss, the law does not yet recognize liability to a third person,

16  expect where a duty is created by statute."  3 Witkin, Summary of

17  California Law (11th ed. 2019) Agency and Employment § 210.

18  There is no such duty.  This also comports with the economic loss

19  rule.  See S. Cal. Gas Leak Cases, 7 Cal. 5th at 400.

20  Accordingly, the negligence claim against Kuraitis must be

21  dismissed.

22       C.   Postle Motion to Dismiss

23          Finally, defendant Michael Postle moves to dismiss the

24  five claims raised against him: violation of the Racketeer

25  Influenced Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962(c)

26  (Claim 1); fraud (Claim 2); negligent misrepresentation (Claim

27  3); negligence per se (Claim 4); and unjust enrichment (Claim 5).

28  (Postle Mot. at 1 (Docket No. 50).

1

2
　　　　　1.　Fraud, Negligent Misrepresentation, Negligence Per
　　　　　　　Se & Unjust Enrichment

3
　　　　Plaintiffs' allegations against Postle for fraud,

4
negligent misrepresentation, negligence per se, and unjust

5
enrichment are all predicated on "monies lost to Mr. Postle" and

6
"the loss of opportunity to earn monies through honest games of

7
poker."  (FAC ¶¶ 224, 231, 239, 241-43.)  Unlike damages stemming

8
from the rake, these damages are quintessential gambling losses

9
that are barred for recovery by California public policy.  See

10
Kelly, 72 Cal. App. 4th at 466.  By plaintiffs' own admission,

11
Stones alone collected and profited from the rake.  (FAC ¶¶ 224,

12
236, 239, 286.)  Accordingly, California's strong public policy

13
against judicial resolution of civil claims arising out of

14
gambling disputes mandates the dismissal with prejudice of

15
plaintiff's claims against Postle for fraud, negligent

16
misrepresentation, negligence per se, and unjust enrichment.  See

17
Jamgotchian v. Sci. Games Corp., 371 F. App'x 812, 813 (9th Cir.

18
2010) (internal citations and quotations omitted) (affirming

19
dismissal with prejudice of plaintiffs' claims for breach of

20
contract, unjust enrichment, negligent misrepresentation, fraud,

21
and negligence in gambling dispute pursuant to Kelly).

22
　　　　　2.　RICO

23
　　　　Plaintiffs' RICO claim alleges Postle and his

24
confederate(s) "used one or more instrumentalities of wire

25
transmissions" to relay information about his opponents' cards on

26
numerous occasions.  (FAC ¶¶ 201, 205.)  Postle argues

27
plaintiffs' claims fail for lack of specificity, including

28

1  failure to allege facts in support of the required predicate act

2  and the harms suffered by specific plaintiffs.  (Postle Mot. at

3  6-8 (Docket No. 50).)

4        RICO provides a private cause of action for "[a]ny

5  person injured in his business or property by reason of a

6  violation of [18 U.S.C. § 1962]."  18 U.S.C. § 1964(c).  To state

7  a RICO claim, plaintiffs must allege: "(1) conduct (2) of an

8  enterprise (3) through a pattern (4) of racketeering activity

9  (known as 'predicate acts') (5) causing injury to plaintiff's

10  business or property."  United Bhd. of Carpenters & Joiners of

11  Am. Bldg. & Const. Trades Dep't, AFL-CIO, 770 F.3d 834, 837 (9th

12  Cir. 2014) (internal citation and quotations omitted).  The fifth

13  element is RICO's "standing" requirement.  See Steele v. Hosp.

14  Corp. of Am., 36 F.3d 69, 70 (9th Cir. 1994).  In order to

15  satisfy the fifth element, plaintiffs must "show proof of

16  concrete financial loss, and not mere injury to a valuable

17  intangible property interest."  Chaset v. Fleer/Skybox Int'l, LP,

18  300 F.3d 1083, 1086 (9th Cir. 2002) (internal citations and

19  quotations omitted).  This prevents RICO from providing "a

20  federal cause of action and treble damages to every tort

21  plaintiff."  United Bhd. of Carpenters, 770 F.3d at 837.

22        Generally, courts have found injury to expectancy or

23  speculative interests do not constitute harm to business or

24  property interests.  See, e.g., Chaset, 300 F.3d at 1087 (holding

25  trading card purchasers do not suffer a federal RICO injury when

26  they do not receive a prize card because they paid for and

27  received the chance to obtain the card); Doug Grant, Inc. v.

28  Greate Bay Casino Corp., 232 F.3d 173, 188 (3d Cir. 2000)

1    (holding lost speculative opportunity in blackjack is not an

2    injury to business or property); Price v. Pinnacle Brands, Inc.,

3    138 F.3d 602, 607 (5th Cir. 1998) (holding "[i]njury to mere

4    expectancy interests . . . is not sufficient to confer RICO

5    standing").  Relying on these cases, courts have specifically

6    found that "gambling losses are not sufficient injury to business

7    or property for RICO standing" because they do not present a

8    tangible injury to property.  McLeod v. Valve Corp., No. C16-

9    1227-JCC, 2016 WL 5792695, at *2 (W.D. Wash. Oct. 4, 2016)

10   (citing Chaset, 300 F.3d at 1087).

11        "Private plaintiffs alleging injuries resulting from

12   their own gambling cannot establish 'injury to business or

13   property' under RICO" because there is no concrete financial

14   loss.  Adell v. Macon Cty. Greyhound Park, Inc., 785 F. Supp. 2d

15   1226, 1238 (M.D. Ala. 2011) (quoting Green v. Aztar Corp., No.

16   02-C-3514, 2003 WL 22012205, at *2 (N.D. Ill. Aug. 22, 2003)).

17   While plaintiffs premise their damages here in part on the rake,

18   (FAC ¶ 217), the plaintiffs have made clear that the rake was

19   collected and retained by Stones alone, and the plaintiffs would

20   have had to pay the rake regardless of whether or not Postle

21   cheated.  (See, e.g., id. ¶¶ 224, 236, 239, 286.)  Consequently,

22   they cannot rely upon it to make their damage claim any more

23   concrete.  Plaintiffs lack standing under § 1964(c) to proceed

24   with their RICO claim because they have failed to allege facts

25   demonstrating a concrete injury to their "business or property."

26   Plaintiffs' RICO claim against Postle must therefore be

27   dismissed.

28        IT IS THEREFORE ORDERED that the motions of defendants

23

1   King's Casino (Docket No. 45), Justin Kuraitis (Docket No. 26),

2   and Michael Postle (Docket No. 50) to dismiss the First Amended

3   Complaint be, and the same thereby are, GRANTED.

4           Plaintiffs are granted twenty days from the date this

5   Order is filed to file an amended complaint against defendants

6   King's Casino and Kuraitis if they can do so consistent with this

7   Order.

8   Dated:   June 3, 2020

9                                      WILLIAM B. SHUBB
                                       UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        24